WALTER E. MANSUR, PETITIONER for CERTIORARI,

*vs.*

COUNTY COMMISSIONERS of AROOSTOOK COUNTY.

Aroostook.     Opinion June 1, 1891.

*Way. Commissioners. Assessments. Regular Session. Stat. 1821, c. 118, § 24; R. S., 1841, c. 25, § § 47, 48; 1857, c. 18, § 33; Stat. 1868, c. 191; R. S., 1871, c. 6, § 51, c. 18, § 32; Stat. 1876, c. 85, R. S., 1883, c. 6, § 78; c. 18, § § 4, 5, 41.*

The statute (R. S., c. 6, section 78) provides that, when a road is laid over lands not within any town or plantation required to raise money to make and repair highways, the county commissioners shall at their first regular session thereafter assess thereon, and on adjoining townships benefited thereby, such an amount as they judge necessary for making and opening the road. *Held*; That the assessments are to be made at the same regular session at which the location of the road is filed; the object of the statute being to prevent their being made at an adjourned term of such regular session.

Such regular session will be the first occurring after the road is laid over the lands.

*Appleton* v. *Co. Com.* 80 Maine, 284, explained.

ON EXCEPTIONS.

Petition for *certiorari*.

The petition dated February 26, 1887, for the laying out of a road from New Sweden to Fort Kent, in Aroostook county, under the provisions of § 41, chapter 18, of Revised Statutes,

was presented to the County Commissioners, at their adjourned January term, 1887, held on March 14, 1887, when they determined that there ought to be a hearing on said petition, and ordered notice to be given for a hearing on June 6, 1887, which notice was duly given. On said June 6, they had a hearing, and proceeded to view the route, and on June 13, 1887, they adjudged the road to be of common convenience and necessity, and went on and laid it out on the surface of the earth.

The regular sessions of the County Commissioners for the county of Aroostook, as provided by law, are held on the first Tuesdays of January and July, in each year.

The January term, 1887, of said Commissioners was finally adjourned on the first day of June, 1887.

At the July term, 1887, the Commissioners' report of the laying out said road was made and placed on file, and thereafter, at the same term, they proceeded to make an assessment upon the lands over which said road was laid, under the provisions of § 78 of chapter 6 of the Revised Statutes.

The cause of error assigned in the petition for *certiorari* was, that such assessment was not made at the first regular term of the County Commissioners after said road was laid out, but at the same term; and the answer of the Commissioners was that the assessment was made at their first regular term after the road was laid out.

The foregoing facts being argued, the presiding justice ruled *pro forma* as a matter of law, that the assessment was made at the first regular session of the County Commissioners after said road was laid over the lands, and that the petition for *certiorari* should be denied.

To this ruling the petitioner excepted.

*Wilson and Woodard*, for petitioner.

The road is not laid over wild lands under the provisions of § 41 of chapter 18, of R. S., within the meaning of § 78 of chapter 6, until the County Commissioners shall have made a return and file of their doings relating thereto required by law.

Sections four and five of chapter 18, apply to roads laid over wild lands as well as to roads laid in incorporated towns, and

the requirements of these sections must be complied with before a road can be regarded as laid, and among these requirements is that of making and filing the return.

The provisions of statute relating to the time of making assessments for benefits are analogous to provisions of statute relating to the time when an appeal from the decision laying out the road can be made. It cannot be held that an appeal from a decision laying out a road should be made before that decision is made known by the filing the return of the laying out; and so it should not be held that assessments for benefits can be made until the first regular term after the return of the laying out of the road is made and filed.

Parties are entitled to an inspection of the records in order to determine what course of action they will pursue in relation to these assessments. If the Commissioners should never make or file their return, could it be said that a road was ever laid within the meaning of § 78 of chapter 6? If not, it must follow that the laying out by the Commissioners on the face of the earth is not the laying out referred to in said § 78. *Appleton* v. *Co. Com.* 80 Maine, 234, should be conclusive on the question raised in this case. The language of the court, in the opinion in that case, shows conclusively that the construction of the statutes claimed by the petitioners is the true one. See also Anderson's Dictionary of Law, page 605; *Wolcott* v. *Pond*, 19 Conn. 590; *Cone* v. *Hartford*, 28 Conn. 363; *Foster* v. *Park Commissioners*, 133 Mass. 321.

If the assessment involved in this case was not made at the regular session of the County Commissioners after the road was laid out, their action was wholly without jurisdiction and the writ prayed for should be granted. *Hayford* v. *Co. Com.* 78 Maine, 153; *Monticello* v. *Co. Com.* 59 Maine, 391.

*Powers and Powers,* for County Commissioners.

The road is "laid over the lands," within the meaning of R. S., c. 6, § 78, when the Commissioners having adjudged it to be of common convenience and necessity actually locate and mark it out upon the face of the earth; and that "their first

regular session" named in said § 78, is that next following said actual manual location and marking out of the road.

As no one of the three appeals allowed by law is either taken away or abridged by an assessment made at the time this one was made, no one can be injured by making the assessment at the first regular session after the road is located and marked out over the lands on the surface of the earth. Every right to be heard and every right to appeal on the questions of location, damages and benefits is preserved to every person interested exactly the same whether the assessment is made at the one term or the other. Such being the case the statute should be so construed as to make it best effect the objects for which it was intended and not so as to hinder and delay the accomplishment of those objects. Endlich on Interpretation of Statutes, § 29. The object of this statute is to subserve public convenience and necessity, with due regard for individual rights, to build roads when and where public convenience and necessity require them.

In *Appleton* v. *Co. Com.* the reported case does not show when the location or the assessment was made, but the printed case and records show that the road was located on July 22nd, 1886, and the assessment made at the next regular session thereafter, to wit: the August term, 1886, being the same term at which the return was filed. Exactly as was done in this case. The assessment was prematurely made simply and solely because an appeal from the location was thereafterwards taken.

PETERS, C. J. By R. S., c. 18, § 41, county commissioners may lay out roads through lands not within any town or plantation required to raise money to make and repair highways, all expenses for making the same to be paid by the owners of the lands. The mode of proceeding in such case is pointed out in succeeding sections. By R. S., c. 6, § 78, provision is made for assessing the expenses upon such lands and for their collection.

The clause of the section that is questioned in this case, reads

thus : "When a road is laid over lands under section forty-one of chapter eighteen, the county commissioners shall at their first regular session thereafter, assess thereon and on adjoining townships benefited thereby such an amount as they judge necessary for making and opening" the road.

The present proceeding is a petition for *certiorari*, seeking to annul the record of a road, established by the commissioners of Aroostook county, leading from New Sweden to Fort Kent. There was no appeal either from the act of laying out the road or of levying the assessments. The defect alleged to exist in the proceedings is that the assessments were prematurely made. The exact question is, whether "the first regular session after a road is laid over" lands, may be the same session at which a report of the establishment of the road is filed. The petitioner claims the assessments should be made at a subsequent session. The respondents claim that they should be made at the first regular session after the action of the commissioners in locating the road upon the face of the earth, which would necessarily be the session at which their report is filed. In other words, one party claims it must be the session next after the report of location, while the other claims it to be the next after the fact of location ; one act being the evidence of the thing done, the other the thing itself.

The question is not free of doubt, and difficulty. Our opinion, however, is that the commissioners committed no mistake in adhering to a literal version of the text of the statute, such opinion being derived principally from an examination of the different preceding statutes out of which the present statute has descended. The history of a statute gives great aid in determining its construction.

The statute in question had its origin in § 24, chapter 118 of the laws of 1821, by which section the liability of owners was established for the expense of constructing roads across unincorporated lands. It provides that the court of sessions "may proceed to lay out such highway in the manner prescribed by law, and shall cause an assessment to be made on such tracts of land" sufficient to defray the cost of the road and other expenses.

The mode of enforcing collection of the assessments is also set out in the section. At that day no appeal was allowed either from the act of laying out the road or from the assessment of benefits to land owners. It was considered as the matter of levying a tax over which the court of sessions should have exclusive authority while acting legally.

The system of appeals in such proceedings is a more modern growth. All the provisions of the act of 1821, were explicit and clear. Some difficulty has been experienced in giving a construction to later statutes on the subject, from the fact that different rights of appeal have been superadded to them, which, in their practical operation, have not been entirely consistent with other provisions. Can there be any doubt, that in the act of 1821, the location of the road and the levying of the assessments were regarded as one act, one result, all the consecutive steps being parts of one adjudication?

The act of 1821, became embodied in chapter 25 of revised statutes of 1841, in the two following sections:

"Section 47. Whenever any highway shall be laid out by the county commissioners, through any unincorporated tract of land, the said commissioners shall decide, whether, in their opinion, such tract, or any part thereof, will be thereby enhanced in value. Said commissioners may, upon a plan of said tract, whether consisting of one or more townships, make as many divisions, as they may think equitable, conforming, as near as convenient, to known divisions, or separate ownerships; and they may assess upon each division, which they shall consider to be enhanced in value, towards the expense of making and opening such road, such sum, as, in their judgment, shall be proportionate to the value, and the benefits likely to result to it, from the establishment of such road.

"Section 48. Said commissioners shall, thereupon, cause an assessment to be made on such tracts of land, township or plantation, or divisions thereof as aforesaid, if they see cause, at such rates per acre, as they shall judge necessary for making or opening such highway, and defraying the necessary expenses attending the same."

Can it be controverted that the various steps described in these sections were intended to comprise a single proceeding? Of course, some things precede others in the order of doing them, the assessment necessarily coming last. "Thereupon," the assessment is to be made, that is, "immediately without delay," say the lexicographers. The word implies close connection, not disconnection. No period of time is to intervene between the steps to be taken. It is not implied that any report shall be filed before the whole work is consummated.

Next comes the revision of the statutes in 1857, before which date an appeal from location had become allowable by law. The phraseology of the provision touching assessments is again changed, the substance of it remaining unimpaired, § 33, chapter 18, reading as follows :

"When a way is laid out over such lands, they shall decide whether any tract or part thereof will thereby be enhanced in value ; and they may make as many divisions as are equitable, conforming as nearly as convenient to known divisions or townships ; and assess upon each division adjudged to be enhanced in value a sum proportionate to the benefits likely to result to it from the establishment of the way. The assessments may be made at such rates per acre as they judge to be necessary for making and opening the way, and for paying the expenses attending it."

The phrase here is, when a way is "laid out over" such lands. This section instructs the commissioners what to do in connection with the act of locating the road as a necessary part thereof or adjunct thereto. The words "laid out" do not imply that a location has been made by any written report, because certain questions are to be considered after the road is "laid out," the decision of which is to be made a part of the report. In locating a road it is indispensable that the commissioners decide at whose expense the road shall be made, and whether the lands crossed by the road will be benefited thereby, and their report must show these facts. *Pingree* v. *County Commissioners*, 30 Maine, 351.

The act of 1868, ch. 191, constituted a more radical change,

two appeals being allowable, instead of the one existing before
that time, an appeal from location and also from assessment, in
each instance the appeal to be entered and heard at the first term
of the Supreme Judicial Court held after the decision by the
commissioners, neither party having any right of exceptions.
This act provided that "when a road is so laid out over such
lands, the commissioners shall immediately thereafter assess
thereon such an amount as they judge to be necessary for making
and opening the road and paying the expenses attending it."
There was to be no lapse of time between the location and
assessment more than that one act would precede the other, all
the different acts constituting a continuous proceeding. To
require the commissioners to do one act immediately after another
act would necessitate that both acts be done at the same session,
for otherwise such a result could not possibly be accomplished.
A future session would not be immediately afterwards.

The revision of 1871 retains substantially the provisions of
the act of 1868, to be found in sections of two chapters of the
statutes instead of in one as before that time. R. S. of 1871,
c. 18, sec. 32; c. 6, sec. 51. Then for the first time appears
the phrase as in the present statutes, "when a road is laid over,"
—the previous phrasing having been "laid out over."

Then came the act of 1876, which laid the foundation for the
present controversy, in amending section fifty-one of chapter
six of the revised statutes of 1871, by striking out the word
"immediately" and inserting instead the words "at their first
regular session;" the substituted requirement being that the
commissioners, when they lay a road over unincorporated lands,
shall at their first regular session afterwards levy the necessary
assessments. The meaning of this amendment is the key of the
question to be solved.

The present revised statutes repeat the provision in the same
words. The words are, at the *first* regular session, not the *next*,
after the road is laid over the land. In the light of previous
legislation, does this not mean that the assessments are to be
made as soon as the work can be done at any regular session of
the commissioners occurring or existing after their report is

filed, if the assessments are not, though they might be, made a part of the report itself? It will be remembered that, from 1821 to 1876, through all the changes of the statute, the idea of expeditious assessments is retained. Did the amendment presuppose that the assessments would not be made as seasonably as before? Inasmuch as before 1876 any delay had been so often peremptorily forbidden, can it be that a prolonged delay (in this case, six months) was then intended? Our impression is that the idea of the change was not to dispense with the customary promptness required but to preserve it, not to create delay but to prevent it, by ensuring action at the first regular session instead of at some adjournment of such session. We are informed that a practice had grown up to some extent of making the assessments after short adjournments of the regular sessions. The amendment would correct that practice. An advantage may have been supposed to be also promoted by ensuring a certainty of time and place for the hearing and decision on the question of benefits. If the assessments be made at the first session, as done in this case, it will inevitably be immediately or soon after the road is run out over the land. The commissioners are required to make their return at their next regular session after the hearing is had. R. S., ch. 18, sec. 5.

What expediency would there be in the delay that a continuance would entail? Commissioners can exercise a better judgment on the questions presented for their decision, acting immediately after hearing the parties and examining the land. It is an advantage to all parties to have an early knowledge of the result on the questions of both location and assessment. The latter may be so satisfactory that there will be no disposition to appeal from either decision. If no appeal be entered, a delay of six months before other proceedings following assessment can be instituted, which consume a long period for their accomplishment, would seem to be time inconsiderately lost. It has always been required to include an assessment of damages in a report of laying out a highway, and why not important to assess benefits as expeditiously? In the case of this road, if there were damages as well as benefits to be assessed, the commissioners were

obliged to state in their return the amount of damages, to whom allowed, and when payable. R. S., ch. 18, sec. 4. Why assess damages in July and benefits in January afterwards?

It is urged that persons interested had no notice that the assessments were to be made. They had as much notice as they would have, whether the proper occasion for their appearance be at one regular session or another. Only one notice is ever given in any case, and that brings parties into court, where they are supposed to be in attendance during all subsequent stages of the proceeding.

The meaning of the words "laid out" has been discussed in the arguments. The words here are "laid over," and it is very likely the latter phrase was intentionally used as better expressing the idea to be conveyed. The words "laid out" used in reference to ways do not always have the same signification. They will be found to be used as descriptive of all conditions of a way, such as a way voted to be built, a way being built, or a way built. The context usually determines the meaning of the expression.

It is urged by the petitioner that the case of *Appleton* v. *County Commissioners*, 80 Maine, 284, makes in his favor on this question. We think it may have that tendency in a portion of the argument of the court, but the result of the case does not necessarily have such a bearing. The question presented in this case was not considered or noticed in that, although slumbering in the papers of that case. The court hesitated, in the determination of that case, which of two theories to adopt as best applicable to it. One theory was that the statute requires the commissioners to proceed with the question of benefits and decide it independently of other issues and questions, so that their determination would stand, unless modified upon appeal therefrom, or rendered nugatory by the location failing to be sustained on appeal. By that mode the commissioners would perform finally all the duties incumbent on them in the premises. That mode would have its advantages, as readily seen in the light of the present investigation. The assessments would be conditionally made, dependent on the validity of the location.

The other theory was that an appeal from location not only suspends that branch of the proceedings, but nullifies all assessments already made, and postpones the authority for making them until after the appeal from location has been finally disposed of. Inasmuch as the commissioners are required, when they assess benefits upon the land, to appoint a time, not exceeding two years from the date of the assessment, within which the road is to be made and opened, and are to do certain other things named in section seventy-eight, before cited, and as the prolonged proceedings now allowed on an appeal from location might exceed such time or consume the greater portion of it, and, further, as there seems to be an incompatibility in the two appeals pending at the same time, we came to the conclusion that we should avoid more difficulties by adopting the policy of construction upon which the case of *Appleton* v. *Commissioners* is based.

But, as before said, that case and this, in their results, will be found not to disagree. On the contrary, the rules of procedure deducible from them will be consistent and practicable.

*Petition denied with costs.*

LIBBEY, EMERY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.