CANOVA, ET AL., COMMISSIONERS OF BAKER COUNTY, APPELLANTS, VS. STATE EX REL., COMMISSIONERS OF BRADFORD COUNTY, APPELLEES.

1. When the Legislature divided New River (Bradford) county it was competent to provide that the new county created out of its territory (Baker) should assume its *pro rata* share of the indebtedness of the former, to be ascertained by the relative valuation of taxable property in each, at the time of the division.

2. The obligation of Baker county to issue its bonds or to pay its debts in the manner provided in the act creating the county passed in 1861, is not affected or controlled by subsequent constitutional or legislative enactment. The obligation of the contract cannot be thus impaired.

3. Before Bradford county can proceed to compel Baker county to issue bonds for its *pro rata* share of the bonded indebtedness of the former to Columbia county, (from which Bradford was taken) it must appear that Bradford had issued and delivered its bonds to Columbia county.

4. Under the act of 1861 creating Baker county it was made a condition precedent to demanding the issuing of bonds by Baker to Bradford that the *pro rata* of the shares of the capital stock in the

Florida, Atlantic & Gulf Railroad Company held by Bradford county should be "set apart" to Baker county.

5. The depreciation of the railroad stock in the possession of Columbia or Bradford county since 1861, for the purchase of which the original bonded indebtedness was created, constitutes no valid reason for the refusal, on the part of Baker county, to pay its proportion of the indebtedness.

6. The fact that Baker county was not a party in mandamus proceedings of Columbia against Bradford county does not affect the liability of Baker county; nor does the judgment in that case preclude Baker county from showing the true amount of her liability to Bradford in any proceeding by Bradford against Baker to compel a contribution of a *pro rata* amount of the indebtedness of Bradford to Columbia.

7. A return to an alternative writ of mandamus should, for the purpose of making an issue, set up a positive denial of facts stated, or should state other facts sufficient to defeat relator's right. A mere answer that a sum stated is not the correct amount is not sufficiently specific.

8. Under the law in force in 1861, the Judge of Probate was *ex-officio* chairman of the Board of County Commissioners. The County Judge who succeeds to the Probate office is not now a member of the Board, but the Board as now constituted is the successor of the former Board, and the same duties devolve upon it, except as its duties have been modified by law.

Appeal from the Circuit Court for Columbia county, the cause having been transferred from Baker county.

The relators, as County Commissioners of Bradford county, applied for a writ of mandamus against respondents, as County Commissioners of Baker county, to compel them to issue certain bonds. The writ having been granted, directing the issuing of the bonds and the levying of taxes to meet the principal and interest thereon, the respondents appealed.

In or about the year 1856 the county of Columbia, under the Internal Improvement Act of January 6, 1855, subscribed for one thousand shares of the stock of the Florida, Atlantic and G. C. Railroad Company, and issued its bonds

33

to the amount of one hundred thousand dollars in payment for the stock, bearing interest semi-annually at eight per cent. per annum. · At that time Suwannee, Bradford and Baker were embraced within the limits of Columbia county. In 1858 the Legislature erected the counties of Suwannee and New River from the territory of Columbia. Section 15 of the act (Chapter 895) provided: "That whenever the said new counties shall have fully organized it shall be the duty of the County Commissioners of Columbia county to set apart and transfer to each of them so many shares of the capital stock of the Atlantic and Gulf Central Railroad Company as shall be necessary to constitute a fair division between the three counties of the ten [one] thousand shares of said stock now held by Columbia county, the relative proportion to be determined by the amount of taxable property within the limits of each of said three counties under the assessment made by the Tax Assessor and Collector next preceding the date of the transfer of said stock." Section 16 reads as follows: "That the County Commissioners of each of the said counties of Suwannee and New River shall, on the making of the transfer of said stock as provided in the preceding section, execute bonds under the seal of their respective counties, payable to the County Commissioners of Columbia county and their successors in office, in sums not less than one hundred dollars each, for such amounts as will, at par value, equal the par value of the shares of stock transferred, the same to have coupons attached bearing interest at the rate of six per cent., to be made payable, principal and interest, at periods corresponding precisely with those of the bonds of Columbia county already issued in payment for said ten thousand shares of stock, and deliver the same to the Judge of Probate of Columbia county in payment of the stock transferred as provided in the preceding section."

Section 17 made it the duty of the County Commissioners of each of the new counties to levy and collect taxes to meet the interest and the bonds as they became due, or to create a sinking fund for the purpose. The next Legislature, in 1859, made the rate of interest to read eight per cent. instead of six, the latter being an error.

In December, 1861, the name of New River was changed to Bradford.

In February, 1861, (Ch. 1185) Baker county was erected out of the territory of New River (Bradford) county. By section 6 of the act it was " enacted that when New River county shall have received her *pro rata* share of her railroad stock from Columbia county it shall be the duty of the County Commissioners of Baker county, together with the Judge of Probate of said county, to transfer the amount of taxable property to the Judge of Probate of New River county, who shall set apart their *pro rata* share of said railroad stock for Baker county, and take the said bonds of said county on the said terms as the said New River county received said railroad stock of Columbia county."

Relators allege that New River county (Bradford) was entitled to three hundred and thirty-three shares of the stock in the said railroad company held by Columbia county on the 5th February, 1861, when the County Commissioners of Columbia demanded of the Commissioners of New River the amount, $33,300, bearing interest at eight per cent. per annum, payable, principal and interest, at periods corresponding with the bonds of Columbia county, which demand was refused by the Commissioners of New River county, leaving the amount of $33,300 and interest unliquidated, which principal and interest amounted to $87,560.

The County Commissioners of Columbia county on the 5th February, 1861, by an order entered in their minutes

did "set apart and transfer to the county of New River three hundred and thirty-three shares of the stock in the Florida, Atlantic and Gulf Central Railroad Company," being its due proportion of the stock held by Columbia county.

On August 18, 1880, the Judge of the 4th Circuit issued a writ of mandamus directing the County Commissioners of Bradford county to execute and deliver to the County Commissioners of Columbia county bonds amounting to $87,560, with coupons for interest at eight per cent.

Petitioners say that they have procured from the Comptroller's office a certified copy of the assessment roll for the year 1861, as made by the Tax Assessor of Baker county, by which means they have ascertained that the due proportion of the capital stock of said railroad company was $6,665 at the date of the organization of Baker county, and they demand that the County Commissioners of Baker county issue and deliver to them its bonds for said $6,665 and accrued interest from December 19, 1859, making an aggregate of $16,970 in bonds bearing interest at eight per cent., payable to the county of Bradford, with coupons attached, as required by law, and to levy and collect a tax to meet the same as they become due.

Petitioners allege that they have demanded of the County Commissioners of Baker county "the performance of their duty as prescribed by the act of the General Assembly of the State of Florida of December 21, 1858, yet they and their predecessors in office have wholly and absolutely neglected and refused to execute, issue and deliver their relative share of the bonds, or any part of the same, in pursuance of the statute; nevertheless your petitioners are willing at all times to transfer and deliver to the proper authorities of said county her relative or proportionate share of the capital stock to which she may be entitled whenever

she is in a condition so to do, or the same is available." Baker county was fully organized in 1861.

They, therefore, pray a writ of mandamus to the Commissioners of Baker county requiring them to comply with their said demand.

Notice of the application having been served, the County Commissioners of Baker county made return (after demurrer overruled):

1. That Bradford county has never complied with the requirements of section 6 of the act to organize Baker county, but on the contrary that New River (or Bradford) has absolutely refused to accept the stock from Columbia county, and refused to issue its bonds to Columbia county. And as New River (Bradford) had not received any stock from Columbia there is no obligation on the part of Baker, and Bradford does not offer said stock or any valuable consideration for the issuing of bonds by Baker county.

2. That at the time said act became a law (1861) the railroad stock was of great value, and had New River then complied with the provisions of Ch. 895 (1858) New River could have set apart to Baker county stock of value to Baker, and by the refusal of New River to receive the stock allotted to her by Columbia she has now neither stock nor any other consideration to offer, but simply asks respondents to issue $16,976 in bonds without any consideration.

3. That the amount of bonds, $87,560, issued to Columbia county by Bradford under the judgment in the mandamus proceedings of August 18, 1880, embarrassed the entire original indebtedness of New River and Baker counties to Columbia county.

4. That Baker county was not a party to the mandamus proceedings between Columbia and Bradford, and is therefore not bound by the proceedings.

5. That the petition of relators does not show correctly the taxable property of Baker county in 1861, which, under the act of February 8, 1861, the County Commissioners and Judge of Probate were required to transfer to the Judge of Probate of New River county (Bradford), and that Baker county is not now indebted to Bradford in any amount whatever.

The return of the respondents was adjudged insufficient, and the court thereupon granted a peremptory mandamus as prayed against them. The appeal is from this judgment.

*A. A. Knight* for Appellants.

*W. W. Wills* and *A. B. Hagan* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court.

It is not a question open to controversy that when a political community, like a county, city or town, shall be divided and its territory reduced or set apart by legislative authority, the Legislature may make regulations not only to apportion the property of the corporate body among the new members or communities created, but to throw the obligation to pay the debts of the entire body upon the several parts in proportion to the taxable wealth of each. This was sufficiently considered in the case of the County Commissioners vs. King, 13 Fla., 451, 472. In the division of Columbia county the liability of the new counties created was preserved, and provision made for ascertaining the just proportion which should be paid by each of the existing indebtedness of the original county. New River (now Bradford) county was one of the new counties erected from Columbia. Baker county, then a part of New River, had no existence except as a portion of the latter.

The liability of the entire property of the county to pay

its debts was preserved by the Legislature in the act providing for the organization of Baker by expressly providing that the *pro rata* amount of the railraod bonded debt of Columbia county properly chargeable to New River, should be apportioned between New River and Baker in the ratio of the taxable property remaining in each. The act of the Legislature, therefore, did not create an indebtedness and impose it upon Baker county, but intended that its due proportion of the debt should be paid by it as though there had been no division of the parent county.

It is claimed that under the present Constitution Baker county cannot issue bonds to pay its portion of this indebtedness, and especially that the Commissioners cannot do so without a compliance with the act of 1877. But this indebtedness and the obligation to pay it existed long before 1868, and no subsequent constitutional or legislative enactment can impair the obligation.

If, therefore, the county of New River (or Bradford), by its proper officers, complied with the requirements of the statute in this regard, its right to demand and receive from Baker county its bonds for its *pro rata* share of the indebtedness mentioned is unquestionable.

The return of the respondents denies that Bradford county has ever complied with the requirements of the act to organize Baker county, avers that New River (Bradford) county refused to accept its share of the railroad stock from Columbia county, and to issue its bonds to Columbia county ; that Bradford has not offered any such stock or other consideration for the issuing of such bonds by Baker county to Bradford.

Examining the petition of the relators we find that it is set forth that New River county refused to issue to Columbia county its bonds for the amount of stock which the County Commissioners of Columbia had set apart and trans-

ferred to New River, to-wit: to the amount of three hundred and thirty-three shares, and it is not alleged that New River or Bradford county has issued to Columbia county its due proportion of bonds as required by law, though petitioners say that they have been commanded by a writ of mandamus under date of August 18, 1880, to issue and deliver the same. Further, the petitioners do not allege that they have " set apart and transferred " to Baker county its *pro rata* shares of the railroad stock as required by law, but say they are willing to do so " whenever she (Bradford) is in a condition so to do, or the same is available."

This is not enough. Bradford must have issued its bonds to Columbia before she can demand of Baker a *pro rata* contribution under the statute. It is also a condition precedent that Bradford county shall " set apart and transfer " to Baker county her due proportion of the stock before Bradford can demand the issue of bonds by Baker. Neither of these conditions have been complied with by Bradford county, as appears by the petitioners' showing.

Respondents say that they should not be compelled to issue bonds in exchange for said railroad stock, because that the stock in 1861 was valuable, and the stock transferred at that time would have been advantageous to Baker county, whereas the stock is now of no value and will not be a consideration for the issuing of bonds as it would have been if Bradford county had promptly complied with the law. To this it must be said that the obligation to pay for the stock was and is upon both counties, and the stock was the property of both counties from and after February 5, 1861, when it was " set apart and transferred " by Columbia county to New River, and it is not shown that the decrease in its value was owing to any wrongful act or negligence of New River or Bradford. And besides, it is provided in the act (section 22) under which the bonds were

originally issued in exchange for stock that no stock held by any county shall be assignable by such county until the bonds shall be paid, except in exchange for such bonds. From 1856 to 1861 Baker was part and parcel of the territory of Columbia and New River counties, and it is not to be assumed, in the absence of anything alleged to the contrary, that the people of Baker or Bradford have ever evinced a desire to possess and pay for such stock, or that the stock has ever been available to pay and cancel the bonds.

The point made by respondents that Baker county was not a party to the mandamus proceedings of Columbia against Bradford county is not a valid objection to this proceeding. While Baker county may not be bound by such proceedings, not being a party thereto, she is certainly bound to pay her *pro rata* of this indebtedness of New River or Bradford, and it is competent that Baker may, in a proceeding against her, show the correct amount chargeable against her.

The respondents say further that the petition does not show correctly the taxable property of Baker county in 1861, upon the basis of which under the act of February 8, 1861, the amount of her said liability should be found. This portion of the return does not make an issue upon any fact stated by the relators, and is therefore not a traverse. The rule is that a return to an alternative writ (or as in this case showing cause upon petition filed) shall contain either a positive denial of the facts stated, or state other facts sufficient in law to defeat the relators' right. High on Ex. Rem., §460, *et seq.*; Com. Bank vs. Canal Com'rs, 10 Wend., 25.

Relators say they arrived at the *pro rata* amount of stock and bonds to be apportioned between Bradford and Baker from the assessment rolls in the Comptroller's office as certified by the Comptroller.

The act creating Baker county (1861) requires the County Commissioners of Baker county, together with the *Judge of Probate* of said county, to *transfer* (certify) the amount of taxable property in Baker county to the *Judge of Probate* of New River (Bradford) who shall set apart their share of said railroad stock for Baker county and take the said bonds, &c.

Some confusion may have been created by the recent change of the name of "Judge of Probate" to County Judge, but it is evident that the legislative intention expressed in the sixth section is that the County Commissioners of Baker county shall give to Bradford county a statement of the taxable property in Baker in 1861 in order that there may be a proper adjustment of the amount of the bonded indebtedness chargeable to Baker. In case the Board of County Commissioners of Baker shall refuse to give such statement, it may then be considered what steps may be proper to obtain the necessary data. The Judge of Probate at the time of the passage of the act was *ex-officio* chairman of the Board of County Commissioners, and the County Commissioners under the present law are the legitimate successors to the former Board in the management of the county business. But it is unnecessary to discuss this matter further, because in the present stage of the case no judgment can be given. It is to be hoped that this unfortunate controversy may be arranged by the parties without further expensive appeals to the courts.

The judgment awarding the writ of mandamus herein is reversed with costs.