E. W. ROUNTREE, J. R. JACK and F. J. BOWEN, as and constituting the City Commission of the City of Punta Gorda, Florida, et al., *Plaintiffs in Error*, vs. THE STATE OF FLORIDA, upon the relation of Georgia Bond & Mortgage Company, a corporation, *Defendant in Error*.

135 So. 888.

Division B.

Opinion filed June 29, 1931.

Petition for rehearing denied August 10, 1931.

*W. D. Bell,* of Arcadia, and *J. H. Hancock,* of Punta Gorda, for Plaintiffs in Error;

*E. J. L'Engle* and *J. W. Shands,* of Jacksonville, for Defendant in Error.

DAVIS, J.—This is a writ of error taken from a final judgment rendered in a mandamus proceeding which involved the statutory duty of a municipality to levy a special tax sufficient to pay the required principal and interest of bonds, and whether such duty was discharged

by the levy of a tax to provide less than the amount of money necessary to be raised for such purpose.

It appears that the City of Punta Gorda had outstanding a total of $970,000.00 of bonds, of which $372,000.00 were general bonds and about $600,000.00 were what are known as special assessment bonds. The City owed $3,550.00 of the general bonds which matured May 15, 1929. It also owed $36,000.00 of special assessment bonds issued under Chapter 9298, Laws of Florida, Acts of 1923, $18,000.00 of which matured May 15, 1929, and $18,000.00 on May 15, 1930. The City was also indebted for eighteen interest coupons of $30.00 each of unmatured bonds issued under Chapter 9298, Acts of 1923, which coupons became due May 15, 1930. The petition for alternative writ of mandamus was not filed until September 29, 1930, after the due date just mentioned.

The assessment roll for the fiscal year 1930-1931 was made up, showing an aggregate assessed valuation for all property in the City of $2,943,000.00. A budget of estimated receipts and disbursements for the fiscal year as prepared and adopted, showed estimated expenses, including items necessary to provide the payment of bonds and interest thereon, in the amount of $409,076.75. To meet this budget the City levied a tax of twenty mills, which was estimated to produce $52,500.00. The balance of the funds necessary, so the city officials determined, was to be accounted for out of sources of revenue other than a current tax levy, such as delinquent taxes and uncollected assessments.

The estimate of revenues which the City relied on to raise the balance of the funds necessary to meet its expenses, embraced the following items which it so classified in the budget: 1—Delinquent taxes—(of which $20,353.22 had been collected in 1921)—$100,000.00; 2—Collections from special assessments—(of which only $18,000.00 were realized the preceding year)—$161,076.75; 3—Refunding bonds—(not then sold) $73,000.00;

and 4 from water service and miscellaneous sources, $21,000.00. All these estimates, except that from the water service, the defendant in error characterizes as unreasonable and extravagant, and evasive of the statutory duty of the city to raise *money* with which to pay its obligations.

Neither in the budget nor the tax levy was there any apportionment of the proceeds of such tax levy to the various expenditures provided in the budget.

On the theory that it appeared that the proceeds of the tax levy made would just about equal the operating expenses of the city, and that unless additional taxes were levied the bondholders would be required to look to the uncertain delinquent tax collections, the uncollected special assessments and the unsold refunding bonds for their money, the relators filed petition of mandamus to require an additional levy to be made.

The city charter (Section 71, Chapter 9055, Acts of 1921, Laws of Florida) required the City of Punta Gorda to "levy and collect annually upon its taxable property aforesaid such sums as may be necessary to *pay* interest on and provide a sinking fund for the payment of all bonds" issued in accordance with law, and relying in part upon this statute the defendants in error, as relators in the court below, obtained the judgment appealed from. The purpose of the proceeding and the effect of the judgment was to enforce such increased tax levy as would be necessary to pay interest on, and provide a sinking fund for, the payment of the city of Punta Gorda's bonds issued in accordance with law after eliminating from consideration delinquent taxes and uncollected special assessments.

Another statutory provision upon which the suit was based is Section 11 of Chapter 9298, Acts of 1923. This Act provides that if the special assessments imposed are not collected in season in respect to the improvements

for which bonds have been issued, so as to pay the principal and interest of said bonds, the governing authority of the municipality shall levy and collect on all taxable property in the municipality a tax sufficient to pay such principal and interest as the same respectively become due and payable.

The relators in their pleadings set up the fact that the City did not collect "in season" sufficient money to pay the assessment bonds and interest of the City, and that the City had no money in its treasury to pay the general bonds or the assessment bonds, or the interest thereon, that it had no property subject to execution, and that for this reason an additional tax levy was required and should be ordered.

The peremptory writ of mandamus granted by the court accordingly commanded the city officials to convene and levy upon all the taxable property, real and personal, in the City of Punta Gorda a tax for the next ensuing fiscal year of said city sufficient to raise and produce a sum equal to the principal of the bonds and interest coupons, and to appropriate and set apart the moneys arising or to arise from said levy for the payment of said bonds and coupons of the relator, and commanded the proper officials of the city to extend on the tax rolls and collect such tax in the usual way.

On behalf of the city it is first contended in this Court that the issuance of the peremptory writ was error because the budget of the city, which was introduced in evidence in the court below, shows assets and resources of the city which, together with the levy actually made and the appropriations for expenditures therein contained, constitutes a full compliance with all the legal duty and obligation of the municipality under the law, to provide for payment of its indebtedness.

But it was alleged in the alternative writ with respect to the special assessment bonds, and not denied, that the city failed to collect and receive its special assessments

"in season" to pay the improvement bonds of the relators. This, however, the city contends is a fact that is inconsequential because the showing is made that the city *does* have sufficient assets, which together with its funds, would be sufficient if realized upon, to pay what is due, and therefore no additional tax levy should be compelled.

The statutory duty of the city under the law is to levy and collect a tax upon its taxable property sufficient to "pay" the principal and interest of its bonds as they fall due. It is manifest, it seems to us, that the appropriation of delinquent taxes or the setting aside of merely prospective future collections from special assessments to the payment of the bonds, does not satisfy the requirement of the statute. This requirement is that the city must make provision to "pay", and if necessary, must in addition to its other resources, levy and collect, as tax upon its taxable property in addition to any delinquent taxes and uncollected special assessments.

The primary obligation of bonds like those here involved is that of *payment in cash*. Whether payment in cash can be made out of the special assessments provided for that purpose, is a matter of internal management for the municipality. Such special assessments, it is true, are levied with the intention, and placed in the budget with the expectation, that they will be paid and therefore the money necessary to *pay* the principal and interest on the bonds realized. But the duty of the city does not stop there. In addition to making such provision as to the assessments, there is a further duty to "levy and collect" a tax on all the taxable property in the municipality sufficient to "pay" the principal and interest, when and after the special assessments levied and imposed in respect of the improvements are not collected and received "in season".

Nothing could be plainer than the language of the statute in this respect, which is as follows:

"All special assessments levied and imposed in re-

spect of the improvements under this and the preceding section shall constitute a fund for the payment of the principal and interest of the bonds authorized by this and the preceding section, and in the event their be a failure to collect and receive the said special assessments in season to pay the principal and interest of said bonds, the municipality shall levy and collect on all taxable property in said municipality a tax sufficient to pay such principal and interest as the same respectively become due and payable.'' (Section 12, Chapter 9298).

So, in accordance with the accepted rules of law applicable to this case, we must hold that where a statute such as this one, provides for the issuance of special improvement bonds for the payment of which special assessments are levied in respect of the improvements, and such statute also provides that in order to pay the bonds that the proceeds of such special assessments shall constitute a fund for the payment of the bonds issued, but further provides that in the event there is a failure to collect and receive the said special assessments *in season* to pay the principal and interest of the bonds when due, that the municipality shall then levy and collect a tax sufficient to pay such principal and interest as the same respectively come due and payable, that the statutory duty of the city is not discharged by the special assessments made unless such special assessments are both collected and received *in season*.

Under such a statute the full duty of the municipality is not completely performed until a special additional tax is levied by the municipality to provide for the required payments, when the anticipated special assessments are *not* collected and received in season. City of San Antonio v. Routledge, 102 S. W. 756.

It is next contended that since the alternative writ in fact alleged that the bonds had been presented for payment, and the proof at the hearing failed to show such to be a fact, that it was error to grant a peremptory

writ upon failure to prove such presentation as a condition precedent to the issuance of the peremptory writ.

But immaterial averments in an alternative writ of mandamus may be disregarded, and if denied by the respondent, a failure to prove the same is no ground for refusing to issue a peremptory writ. 38 C. J. 892. The rule is well established in this State that a denial of matters alleged in an alternative writ of mandamus by way of inducement does not present a material issue. State v. Haskell, 72 Fla. 176, 72 So. 651. It is also the well recognized rule that a return to an alternative writ of mandamus must deny the material facts alleged in such alternative writ where without the existence of such facts no peremptory writ could be granted as prayed, or that such return must set up other facts sufficient to defeat the relator's alleged right. Canova v. State, 18 Fla. 512; Polk County v. Johnson, 21 Fla. 578; Ray v. Wilson, 29 Fla. 342, 10 So. 613; 14 L. R. A. 772.

Since it is generally recognized that presentment of municipal bonds for payment, or a demand for payment before suit, is not necessary when the bonds have not been paid as contemplated (Green County v. Daniel, 102 U. S. 187, 26 L. Ed. 99; Hughes County v. Livingston, 104 Fed. 306; Speer v. County Commissioners, 88 Fed. 749; Greeley v. Whitehead, 35 Fla. 523, 17 So. 643) it is clear that a denial of the allegation of presentment as set forth in the relator's alternative writ raised no material issue. Consequently, relator's failure to prove that which was immaterial to the relief sought, though denied in terms, became itself immaterial on the question of award of a peremptory writ of mandamus on the merits of the case as made by the pleadings and disclosed at the trial.

The duty of the city under the law does not depend upon the fact of the presentation of the bonds and coupons for payment when due. The duty imposed is the duty to provide an adequate fund *in cash* out of which payment will be assured when the bonds *are* presented.

The alternative writ positively and in terms alleges that the City of Punta Gorda had no *money* with which to pay the bonds or coupons and that although the relators had requested the city to provide sufficient funds to pay its obligations, that it had failed and refused to do so.

Such allegations, undenied as they were, showed a right in the relator to have a special tax levied to pay its bonds. Such right could neither be reinforced nor detracted from by presenting or not presenting the bonds and coupons for payment. Therefore presentation was utterly unnecessary as a condition precedent to the right of relator to a peremptory writ to coerce that to which it was shown to be lawfully entitled, irrespective of such presentation.

Where a duty is imperatively required by law to be performed by ministerial officers, as the levying of a specific tax, no demand is necessary to lay the foundation of an application for a writ of mandamus to enforce it. Columbia County v. King, 13 Fla. 451. Where an alternative writ alleges a request to provide for payment of bonds and interest coupons as required by statute and a refusal to comply with such request, and the return merely denies that the bonds or coupons were presented for payment, the return is evasive and insufficient. State ex rel. v. Jacksonville, 22 Fla. 21.

We next consider the proposition urged by the City that the electric light and water bonds are not valid and binding obligations of Punta Gorda. Plaintiffs in error argue in this connection that the electric light and water bonds are invalid because issued for the "costs and expenses of electric light and water works", as opposed to "constructing and maintaining water works or other illumination works". An electric light plant is embraced within the designation "other illumination work" as that term is used in the statute and the "costs and expenses" of an electric light plant are certainly a part of the "maintaining" of such plant.

Furthermore, Section 21 of Chapter 5085 Acts of 1901 which is the Charter of the City of Punta Gorda, as amended by Chapter 5537, Acts of 1905, authorized the bonds in question to be issued, not only to obtain funds "to be used in the construction and maintaining" of utilities, but also "for any other purpose deemed necessary for the public good." City utilities are generally regarded as "for the public good" and taxes levied to enable a municipality to acquire or construct same have always been held to be for a proper municipal purpose. State v. Tampa Water Works Co., 56 Fla. 858, 47 So. 358; 19 L. R. A. (N. S.) 183n; Jacksonville Electric Light Co. v. Jacksonville, 36 Fla. 229; 18 So. 677, 30 L. R. A. 540, 51 Am. St. Rep. 24.

As to the suggested invalidity of the special improvement bonds which were issued under Chapter 9298, Acts of 1923, it is sufficient to call attention to the latest declaration of this Court in a case decided at this term of City of Lake Alfred, et al. v. Lawless, et al., wherein it was specifically recognized and held that Chapter 9298 applies to all cities and towns regardless of other not inconsistent provisions which may be contained in the particular local act constituting the charter of the city. See also Abell v. Boynton, 95 Fla. 984, 117 So. 507, wherein this Court speaking through Mr. Justice Terrell said:

"The Charter Act of a municipality generally defines the orbit in which it must move and execute every power and duty imposed on it. Chapter 9298, Acts of 1923, shows on its face (Section 21) that it repealed no act of like substance and that it was intended as a 'supplemental, additional and alternative method of procedure for the benefit of all cities, towns and municipal corporations of the State of Florida, whether organized under special act or the general law' ".

It is also shown that these bonds have been duly validated by judicial proceedings and that previous payments of interest on the bonds have been made. No question of constitutional authority is raised here as was done

in the case of Weinberger v. Board of Public Instruction of St. Johns Co., 93 Fla. 470, 112 So. 253, and insofar as legislative authority is concerned the city is now estopped to contest the validity of the bonds which are shown to be in the hands of innocent holders thereof. It is also significant to point out that the charter of Punta Gorda was enacted in 1901 long prior to Chapter 9298, *supra*, and that there can be no question raised here that the latter Act was superseded by the Charter Act, or that the Charter Act because inconsistent with the general law took the City of Punta Gorda out of the operation of the general Act referred to.

The last contention urged is that the special levy which has been ordered will work a great hardship upon the taxpayers of the City of Punta Gorda. This contention is sufficiently answered by the holdings in the cases of Klemm v. Davenport, 100 Fla. 627, 129 So. 904, and State ex rel. Dos Amigos, Inc. v. Lehman, 100 Fla. 1313; 131 So. 533.

We might also add a quotation from the very early case of Columbia County v. King, 13 Fla. Tex. 478, where the Court in answering a like argument said:

"It is a matter of regret that the burden of paying this debt in the form of a tax falls upon the propriety of citizens with more than the weight of personal obligation, yet this is the mode pointed out by the law, and the people have, through the Legislature and at the polls, imposed it upon themselves, and the consequences cannot be averted by the courts. In the progress of events, and with brighter times, better fortunes await them."

Having considered the principal points argued in the very able briefs filed by counsel for the respective parties, we find no error in the judgment attacked and it therefore must be affirmed.

Judgment affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

Buford, C.J., and Ellis and Brown, J.J., concur in the opinion and judgment.