STATE, *ex rel.* HAVANA STATE BANK, a Corporation, v. JOHN B. RODES, Chairman, Board of County Commissioners of Brevard Co., *et al.*

157 So. 33.

Opinion Filed October 12, 1934.

*Gregory & Towles,* for Relator;
*Noah B. Butt,* for Respondents.

DAVIS, C. J.—On June 20, 1934, this Court awarded a peremptory writ of mandamus against the respondent officials of Brevard County, Florida. The writ required the Board of County Commissioners of Brevard County to convene and revise the county budget for the year 1934, so as to include therein a tax upon all real and personal property, railroad, telegraph and telephone lines owned or situated within Special Road and Bridge District No. 3, Brevard County, to realize a sum sufficient to pay the bonds and interest coupons of relator described in the writ, and to pay the interest on said bonds, and thereafter to certify the

same as required by law to the respondent, Wright, as Tax Assessor, to calculate and carry out said taxes and assess the same on the tax assessment roll of Brevard County for the said tax year and verify the same in accordance with law. The respondent, G. M. Simmons, as Clerk of the Circuit Court, was commanded by the writ to execute, sign and certify all papers, certificates and resolutions required by law to be signed, executed and delivered in performance of the duties in and by the peremptory writ required. The peremptory writ was issued under date of July 23, 1934, and was served by the sheriff on the respondents on July 27, 1934.

The case is again before us on a motion for rule in contempt against the respondents to require them to show cause why they should not be held in contempt for their alleged disobedience to the commands of the peremptory writ. The motion asserts that such disobedience consists of the following:

The bonds and interest coupons amount to something more than $6,000.00; the peremptory writ requires the respondents to so amend their budget and make such tax levy for relator's benefit as will "realize" a sum sufficient to pay relator's bonds and interest coupons; that the total sum required to be "realized" in the levy to be made is $6,415.00 for principal and interest; that the assessed valuation of the taxable property, railroad, telephone and telegraph lines within Special Road and Bridge District No 3 of Brevard County is approximately fixed at $1,741,840.00; that for the year 1934 in alleged compliance with the commands of the peremptory writ the respondents have made a levy of only four mills against the taxable properties, railroads, telephone and telegraph lines aforesaid; that the said levy on a basis of *one hundred per cent. collection* will "realize" only $6,967.36, from which must be deducted legal fees and

commissions of the Tax Assessor and Tax Collector; that based on past experience in tax collections the probable tax collections for 1934 will not exceed 50% of the amount of taxes levied and extended on the tax roll, or in other words, that the probable amount that will be actually "realized" will be only 50% of the $6,967.36 represented by the four mill tax levy made pursuant to the peremptory writ; that, as shown by an affidavit of the Tax Aessessor of Brevard County, the tax collections of previous years have resulted in a collection experience, viz.:

1930—78% state and county, 71% district.

1931—58% state and county, 44% district.

1932—(no figures given).

1933—38% state and county, 27% district (to date).

The rule in contempt is therefore directed to the proposition of requiring the county commissioners to so levy their special tax on an assessment valuation of $1,741,840.00 as to "realize" the sum of $6,145.00 computed and calculated upon a probable tax collection anticipation of but fifty per centum of the levy made. The result sought is therefore the making of a levy of approximately eight mills instead of four from which to actually "realize" in cash tax collections the sum of $6,145.00 if only one-half of the levied and assessed taxes be currently collected. Should, however, there be a 100% tax collection, a special tax levy of eight mills would produce on an assessed valuation of $1,741,840.00 approximately $13,934.72, amount greatly in excess of relator's demand of but $6,145.00.

Section 2303, C. G. L., 1525 R. G. S., contemplates that in making up county budgets and levying county taxes the county commissioners shall anticipate a tax collection of ninety-five per cent. of all taxes levied and extended on the

tax roll *on the taxable property valuations as finally equal-ized and approved by the county commissioners.*\* Other sections of the budget law allow for the inclusion in the budget of added estimated revenue to supplement the amount of revenue to be raised by tax levies. Anticipated collec-tions from redemptions of State tax certificates during the fiscal year may be set up in the form of a surplus tax fund to offset what may be lost during the current tax year from other properties sold to the State during such year.

The statutes of Florida relating to finance and taxation contemplate that taxes shall not only be *levied* to meet the revenue requirements of the government, but that the re-sponsible officials of the county shall use all appropriate means to *enforce* collection of those taxes which are actually levied. There is no warrant in law for making excessive current tax levies on taxpayers on the theory a large portion of the taxpayers will either fail or refuse to pay what is

---

\*This means that only "live" taxable properties shall be considered as the tax levy base. Properties theretofore sold to the State for non-payment of taxes because no outside tax certificate buyer would put up the cash necessary to convert the uncollected taxes into a cash asset should not be included in the tax levy base, because the statute contemplates that the taxes imposed on such properties shall not be extended for collection on the tax roll itself. Chapter 16252, Acts 1933, makes only a temporary de-parture from the financial plan providing for one year's exten-sion of taxes against such State tax certificated land in order that next tax certificates may be issued in the light of the advan-tages of Chapter 14572, State, *ex rel.* Gillespie v. Baskin, 102 Fla. 329, 136 Sou. Rep. 262, is not *contra.* In that case it was held that the city was obligated to levy a tax "sufficient to pro-duce" a particular sum *taking into consideration the probable percentage of uncollected taxes for 1931,* because the city was obligated to use its delegated powers of taxation in such man-

levied and assessed against them. This is so because realization of cash on a tax sale may supply cash equivalent to what is not voluntarily paid and tax redemptions during the year may offset what is currently lost as a revenue-producing asset.

The statutes of the State of Florida contemplate the voluntary payment of taxes by taxpayers within the season allowed therefor, and if that be not done, that then the taxing authorities shall proceed forthwith to "realize" the amount of taxes levied and assessed by selling the properties and thereby getting the cash from other sources than the delinquent taxpayers. This they are to accomplish by selling and turning the delinquent property into a cash equivalent capable of being currently "realized" in like manner as the taxes would have been if they had been voluntarily paid. By such processes the county will as to all solvent taxable properties "realize" its assessed taxes by payment in cash or at a cash sale subject to redemption of the property sold for the amount of such sale together with

---

ner as to provide a fund sufficient to pay in cash what it owed and was therefore vested with a direct discretion which it was required to exercise in the execution of its budget-making and tax-collecting powers. With respect to county finances county commissioners are bound to proceed within the limits of the statute that requires them to levy taxes on live taxable assets sufficient to produce what is required for county purposes, taking into consideration probable collections from tax redemptions as mere offsets against probable delinquencies of the same kind. If a surplus of collections from redemptions *actually* results it can be used to reduce taxes for the following budget year. If a deficit results it must be provided for by a special tax levy for outstanding indebtedness purposes, which purposes the tax levy statutes have consistently authorized taxes to be levied for.

penalties, within the applicable statutory period allowed for such redemption.*

Furthermore, there is carried over from previous years by way of a surplus all estimated revenues likely to be derived from redemption of lands *sold to the State* at prior tax sales, from which sales to the State the county realized no cash at the time of sale, because such lands went "off the tax books" for the time being. Such lands being "dead assets" are intended to be excluded from any computation of anticipated tax proceeds, while current anticipated tax collections are required to be estimated on the basis of a probable collection of 95% of any taxes that may be levied against solvent taxable properties "not off the tax books" through delinquencies of this description.

Lands sold to the State for unpaid taxes are presumably those lands as to which the State can find no cash purchaser at the time of their being offered at a tax sale. See Section 972 C. G. L., 759 R. G. S. Hence such lands technically "go off the tax books" until they are redeemed. This is to prevent their being subsequently included in any computation of probable tax-produced revenues that must be based entirely on levies made on taxable values of properties that reasonably can be expected to result in the "realization" of cash, either through payment of taxes in cash, or a cash tax sale to some private bidder in the event of delinquency.

---

*The provisions of Florida tax statutes (Section 984 C. G. L., 769 R. G. S.) that require lands sold to the State for unpaid taxes to be in effect "taken off the tax books" in the making up of assessments and the calculating of tax levies for subsequent years, are to carry out this very idea by eliminating as a "dead asset" any property which the taxpayer will not pay the taxes on and from which the amount of taxes assessed cannot be realized in cash by means of a tax sale to someone who will buy the property for the amount of the taxes for which it is sold payable in cash.

The statutes of Florida as they now exist contemplate no increase in the levy of taxes merely because taxes in past years have either been slow in payment or for some reason have been allowed to go unenforced. So long as taxable properties are not technically "off the tax books" by being embraced in State tax certificates, the taxes on which are not to be extended under Section 984 C. G. L., 769 R. G. S., they are to be included in assessed valuations and amounts of tax levies based thereon are to be computed under the budget law as an anticipated tax "realization," either by enforcing or collecting the taxes levied, up to 95% of the levy as made.

Every taxpayer obviously has an interest in enforcing payment of taxes by others equally liable to the payment of taxes. State, *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. Rep. 333. With respect to governmental obligations and appropriations required to be made with which to operate the government, all taxpayers are, as it were, sureties for one another. State, *ex rel.* Soutter v. Common Council of Madison, 15 Wis. 30 (Text p. 33). The failure of some taxpayers to pay their taxes when due inevitably results, of course, in a greater burden of taxation being borne by the faithful who may be required on successive, but not cumulative, tax levies to make up for deficits and delinquencies. The duty to pay a public obligation ends only when the whole money is collected and the debt actually paid. It does not cease with the levying of one tax which is in part unsuccessful. The evils resulting from this age-old, but lawful, inequity are to be obviated by the rigid enforcement of the tax laws, the penalizing of those who transgress their provisions and the election of faithful and competent officers, as the Supreme Court of Wisconsin in the last cited case has pointed out.

But the levies of taxes to cover deficits arising from de-

linquencies are not to be prospectively anticipated under our present statutes through cumulative levies, but rather by successive levies should the latter be required to raise the revenues essential to pay off debts and appropriations as to which the revenues provided to be raised have not fully realized. To afford protection to taxpayers in this respect the present statutes require the adoption and publication of notice of estimates prior to the making of any tax levies based thereon, in order to allow those who may be affected an opportunity to be heard before the amount of any tax levy is fixed. Section 2306 C. G. L., 1528 R. G. S., as amended by Chapter 16286, Acts 1933.*

While the tax involved in the present case is a special road and bridge district tax for debt service purposes, and is required to pay an obligation for which adequate provision is due under the law to be made, in order that relator's bonds and coupons may be paid forthwith, the principles applicable to the levy and collection of said tax are those governing county finances and taxation. This is so because our statutes contemplate that special road and bridge district tax levies be made and collected in like manner, and on the same tax roll, as general county taxes.

Should the relator's debt obligations not be discharged by what is actually collected on the present tax levy of four mills here complained of, relator is entitled to have his appropriate remedy by way of successive and adequate levy

---

*But see Chapter 14572, Section 1, which provides that a failure to comply with procedural statutes of this character does not constitute any defense against the enforcement of the tax, the remedy to the taxpayer for a default in this respect being by mandamus to compel the responsible officers to proceed according to law. State, *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. Rep. 333.

sufficient to pay him.   See Rountree v. State, *ex rel.* Georgia Bond & Mtg. Co., 102 Fla. 246, 135 Sou. Rep. 888.

The motion for a contempt rule is denied.

WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.