**PRINGLE et al. v. CITY OF ARCADIA, FLA.**

No. 13372.

United States Court of Appeals Fifth Circuit.

Nov. 20, 1951.

336

Lawrence Rogers, Kissimmee, Fla., Joseph P. Lea, Jr., Orlando, Fla., for appellants.

T. M. Shackleford, Jr., Tampa, Fla., Lewis E. Purvis, Arcadia, Fla., for appellee.

Before JOSEPH C. HUTCHESON Chief Judge, and HOLMES, and STRUM, Circuit Judges.

STRUM, Circuit Judge: Appellants, as plaintiffs below, sued the City of Arcadia, Florida, in an action at law to recover interest on refunding bonds issued by said City, at the interest rate fixed in the original bonds rather than at lower rates fixed by the refunding resolution of the City Council pursuant to which the refunding bonds were issued.

On July 1, 1937, the defendant City had outstanding a bonded indebtedness of $1,064,000 principal, with $388,000 accrued and unpaid interest thereon. Some of this original indebtedness bore interest at 6%, some at 5½%, and some at 5% per annum.

On November 14, 1938, the City Council adopted a resolution authorizing an issue of 30 year refunding bonds, to be dated July 1, 1937, in the principal sum of $1,452,000. The bonds were divided into two classes: First, Series A, B, and C, in the principal sum of $1,064,000, representing the original principal indebtedness, bearing interest at 2% to July 1, 1942, 3% to July 1, 1952, 4% to July 1, 1962, and thereafter at 5% until paid. Second, Series AA, BB, and CC, in the principal sum of $388,000, representing total unpaid interest on the original bonds as of July 1, 1937, bearing interest at 1½% to July 1, 1942, 2½% to July 1, 1952, 3½% to July 1, 1962, and thereafter at 4½% until paid.

The sole question on this appeal is whether plaintiffs are now entitled, as they contend, to the original rates of interest, or whether, as the City contends and the trial court held, plaintiffs are entitled only to the reduced rates carried by the refunding bonds.

Section 4(b) of the refunding resolution adopted by the City Council, November 14, 1938, required the City to levy in the years 1937 and 1938 an ad valorem tax on all taxable property sufficient to produce the sum of $30,000 each year, and for the years 1939 to 1951, inclusive, $45,000 each year, "including and deducting therefrom any revenue, other than from ad valorem taxes, which may be available and which is so

applied." The resolution further provides: "The respective annual tax levies shall be increased when necessary to provide sufficient funds for the actual interest and sinking fund requirements of the year next succeeding that in which the budget is being made and prepared."

Section 4(b) further provides that the City may refrain from increasing the annual "appropriation" from $30,000 to $45,000, except as to funds available for debt service from sources other than ad valorem taxes, but in no event shall the City reduce the "annual ad valorem tax levy" below the amount sufficient to produce $30,000 in each of the third to fifteenth years (1939 to 1950), "except as to the excess of revenue over and above $15,000 per year applied from sources other than ad valorem taxes." The City was therefore required during the years 1939 to 1951 to provide at least $30,000 for debt service.

Section 4(1) of the refunding resolution provides that if the City fails to perform its obligations thereunder, including the payment of interest, and such failure continues for 12 months, then upon the demand of 25% of the refunding bondholders, the interest rate would revert to the higher rate borne by the original bonds. Plaintiffs allege, but the City denies, that it has failed to promptly pay the coupons on their due date, and that the City did not levy sufficient taxes to produce from current collections a sum equal to interest and sinking fund requirements, so that plaintiffs are now entitled to recover interest at the higher rate fixed by the original bonds, as provided in Section 4(1) of the refunding resolution. That is the issue now before the Court.

It is conceded that the City did not promptly pay on their due date some of the coupons maturing prior to the commencement of this suit. The City asserts, however, that its inability to promptly pay the interest coupons resulted from failure of collections, not from its failure to levy ad valorem taxes apparently sufficient to meet the requirements of the refunding resolution as charged by plaintiffs, and, moreover, that all coupons were paid within the 12 months period of grace allowed by Section 4(1) of the refunding resolution.[1]

The following table shows the requirements, anticipated revenue and actual collections, during the years in question, 1937 to 1948:

| Year | Required by refunding resolution | | | Amount anticipated | Actual collections all taxes |
|---|---|---|---|---|---|
| 1937 | 30,000 | | | 30,304.46 | ........ |
| 1938 | 30,000 | | | 33,594.85 | 17,197.19 |
| 1939 | 45,000 | option of | 30,000 | 31,053.08 | 42,062.95 |
| 1940 | 45,000 | " | " " | 31,056.52 | 33,415.95 |
| 1941 | 45,000 | " | " " | 33,511.43 | 28,446.38 |
| 1942 | 45,000 | " | " " | 33,409.32 | 55,702.25 |
| 1943 | 45,000 | " | " " | 34,366.50 | 37,176.07 |
| 1944 | 45,000 | " | " " | 34,832.40 | 28,661.32 |
| 1945 | 45,000 | " | " " | 35,211.44 | 32,435.88 |
| 1946 | 45,000 | " | " " | 34,850.59 | 30,841.93 |
| 1947 | 45,000 | " | " " | 43,152.95 | 30,440.01 |
| 1948 | 45,000 | " | " " | ........ | 10,775.45* |

*To January 20, 1948.

The foregoing tabulation shows that anticipated revenue exceeded the required $30,000 each year from 1937 through 1947, but in 1937, 1938, 1941 and 1944 actual collections fell below $30,000. Collection figures for 1948 ($10,775.45) are incomplete, as the suit was commenced while current collections for that year were still in progress.

Although the refunding bonds were authorized on November 14, 1938, actual exchange of refunding for original bonds did not begin until one year later, November 14, 1939, and was not completed until several years thereafter. In 1937 and 1938, no refunding bonds were actually outstanding, but the City nevertheless made a $30,000 levy for debt service as required by the refunding resolution. Up to and including 1939, the City collected $59,260.14 for debt service for these bonds.

[1] "* * * said governing authority (City Council) shall be accorded a period of twelve (12) months after the happening of such failure, refusal, or default, to correct same, and upon its inability or refusal to do so within that period * * * (and upon the demand of 25% in principal amount of said refunding bonds) * * * each of the Refunding Bonds of said issue shall, at the option of the respective bondholders thereof, revert to and thereafter bear interest at the original rate borne by" the original bonds.

In 1941, tax collections for debt service fell below $30,000. In 1942, however, the millage was increased and actual collections amounted to $55,702.25, which more than made up the deficiency. A deficiency occurring in 1944 was similarly made up by increased levy.

[1] The facts show that the City had on deposit with its paying agents sufficient funds to pay coupons 1 through 7, when they matured. The same was true as to coupons 10, 11, 12, 13 and 15. As to the remainder, the City had sufficient funds on deposit with its paying agents to pay them within 12 months of their due date, so that no coupon remained in default longer than the grace period allowed by the resolution.

 It appears that the City also complied with its contract obligation to levy an ad valorem tax on all taxable property sufficient to produce the sum of $30,000 each year from 1939 through 1947. It is true that for the years 1941 and 1944, the actual collections fell below that figure, but this was remedied by increasing the levy during the succeeding year. Temporary deficiencies in collections during these and other years were made up in part by collections of delinquent taxes which were applied to debt service as the money came in, so that for each of the years in question the City collected either from current or delinquent taxes sufficient funds to pay each coupon at maturity, or within 12 months thereafter. The plaintiffs contend that in determining whether or not the City has complied with its obligation to levy a minimum of $30,000 in taxes per annum, delinquent tax collections should not be considered. So long as the City has in good faith complied with the requirements of the resolution by levying a millage apparently sufficient to produce the required sums, which was done, we see no objection to the City utilizing delinquent taxes for prior years, when collected, to make up deficiencies in revenue due to unanticipated shortages in current tax collections. When the levy is made, the City can not know with precise accuracy just what the percentage of collections will be. It can only estimate the same in good faith. To use these delinquent taxes for the purpose stated is simply to apply them to the purpose for which they were originally levied. So long as the money is available to pay their coupons as they mature, or thereafter within the grace period allowed, plaintiffs should not complain as to the source of the revenue. The essential facts in this case differ materially from those in Rountree v. State ex rel. Georgia Bond & Mtg. Co., 102 Fla. 246, 135 So. 888.

The facts support the findings of the trial court that the City complied with the requirements of the refunding resolution in the levy of taxes for debt service, and that in the payment of interest coupons there was no delay beyond that allowed by said resolution, so that no default occurred which would entitle plaintiffs to the original and higher rates of interest.

Affirmed.