J. M. LEE, State Comptroller, CLAY COUNTY, FLORIDA, BOARD OF PUBLIC INSTRUCTION OF CLAY COUNTY, BOARD OF PUBLIC INSTRUCTION OF DUVAL COUNTY, LEVY COUNTY, BOARD OF PUBLIC INSTRUCTION OF LEVY COUNTY, and MADISON COUNTY, v. ATLANTIC COAST LINE RAILROAD COMPANY.

194 So. 252
Division A
Opinion Filed January 2, 1940
Rehearing Denied March 9, 1940

**548**

*George Couper Gibbs,* Attorney General, *Tyrus A. Norwood,* Assistant Attorney General, *Keen & Allen, J. Velma Keen, Wm. P. Allen* and *Frank O'Kelley, Jr.,* for Appellants.

*Olin E. Watts* and *Jennings & Watts,* for Board of Public Instruction, for Appellant;

*John B. Sutton, G. A. K. Sutton* and *Thomas B. Adams,* for Appellee.

BUFORD, J.—On May 31, 1934, Atlantic Coast Line Railroad Company filed its bill of complaint against J. M. Lee as Comptroller of the State of Florida to contest the validity of certain special tax school district taxes and certain special tax road district taxes against the railroad property for the year 1933. The bill was afterwards amended in many respects. During the time that the suit has been pending in the circuit court there have been settlements between the railroad company and the involved districts in many of the counties and, therefore, the bill of complaint was dismissed as to districts in all counties other than Clay, Duval, Levy and Madison. Clay, Levy and Madison Counties and the Boards of Public Instruction of Clay, Duval and Levy Counties were intervenors in the court below. Motions were interposed to dismiss the bill of complaint and to strike certain parts of the bill of complaint and to strike certain amendments to the bill of complaint.

The Board of Public Instruction of Duval County filed answer and motion to dismiss the bill of complaint.

On June 28, 1938, the circuit judge entered separate orders on the various pleadings and on September 7, 1938, after having granted a rehearing to the Board of Public Instruction of Duval County, entered an order granting the relief sought by that board. The Board of Public Instruction of Duval County was joined as an appellant here solely for the purpose of obviating any question of non-joinder of necessary parties.

The matter is before us on direct appeal and cross appeal. The direct appeal brings for review four orders of the Chancellor of June 28, 1938, while the cross appeal brings for review an order of the chancellor entered the 7th day of September, 1938, and the appeal is also:

"From so much of that certain order and decree made in

said cause dated June 28, 1938, and recorded in Chancery Order Book 14 at page 593 of the records of said circuit court, as held part of the bonds issued by Special Tax School District 6 of Duval County valid; that is to say, in any amount up to 20% of the tax valuation of property in said district; and as held valid a corresponding part of the complained of debt service levy for said district.

"3. From so much of Paragraph 1 as strikes pages 51-a through 51-f of the bill of complaint as amended, paragraphs 2 and 3, portions of paragraph 4, paragraph 7, paragraph 8, paragraph 10, and paragraph 11, of decree dated June 28, 1938, and recorded in Chancery Order Book 14 at page 593 of the public records of said court.

"4. From paragraphs 3 and 10 of order and decree dated June 28, 1938, entitled 'Decree on Joint and Several Motion of Clay County, Florida, *et al.,* to Strike Certain Parts of the Bill of Complaint and Amendments Thereto,' recorded in Chancery Order Book 15, page 595, of said public records.

"5. From Section 1-b, Paragraph 2(1), (2), (3), (4), and Paragraph 5(4), and from Section II-c, paragraphs 4 and 8, of decree entitled 'Decree on Joint and Several Motion as Amended of Levy County, Florida, *et al.,* to Strike Certain Parts of the Bill of Complaint and Amendments Thereto, and for Other Relief,' recorded in Chancery Order Book 15, page 25, *et seq.,* of the public records of said court."

The first order of June 28, 1938, above referred to denied motion to strike the contents of the bill of complaint as shown on page 48 thereof through page 53, and on page 186 through page 191 and on page 196 through page 202 thereof. Then it contained the following:

"It is further ORDERED, ADJUDGED AND DECREED in respect to pages 61 and 62 that upon the defendant's motion

to dismiss, as well as the motion of the intervenor, Board of Public Instruction of Duval County, to dismiss and its answer incorporating such motion, that the same is granted in part and denied in part, viz.:

"That the bond issue of $100,000.00 be and it is hereby declared to be valid to the extent that the same is supported by twenty per cent of $179,742.00, which is the sum admitted in the Answer to be the total assessed value of said Special Tax School District No. 6 of Duval County, Florida, on January 1, 1925, to such proportionate extent the tax is invalid."

Four other orders and decrees were entered, three of which were of the same date as that above referred to and the order was dated September 7, 1938, in which a part of one of the decrees of June 28, a part of which is hereinabove quoted, was modified.

The three other decrees of June 28, 1938, were denominated as follows:

1. Decree on defendant's motion to strike certain parts of the bill of complaint and amendments thereto;

2. Decree on joint and several motion of Clay County, Florida, *et al.,* to strike certain parts of the bill of complaint and amendments thereto;

3. Decree on joint and several motion, as amended, of Levy County, Florida, *et al.,* to strike certain parts of the bill of complaint and amendments thereto and for other relief.

These decrees were upon motions as indicated attacking the bill of complaint. (The motions identified the allegations attacked by reference to pages of the bill of complaint, or to paragraphs of the bill of complaint.) The allegations attacked and the ruling of the chancellor on the motion applying to the several allegations may be digested as follows:

*Pages 51a-51f, inclusive:* Alleged that the improvements made in the several road and bridge districts with the proceeds from the sale of the bonds were detriments rather than benefits to plaintiff. *Granted;* because plaintiff, by failing to take appropriate steps when the bonds were issued to show lack of benefits, is now estopped from setting up same.

*Pages 51g and 51h:* Allege Chapter 15659, Acts of 1931, and Chapter 14486, Acts of 1929, provide a complete scheme whereby counties and special road and bridge districts will be reimbursed for building State roads, and the bonded indebtedness so incurred will be liquidated by gas taxes; it is thus unnecessary to levy taxes for such·debt. *Denied;* these allegations, connected with the allegations in the amendment to the bill of complaint, make out a *prima facie* case entitling plaintiff to relief because it imposes an undue burden on interstate commerce.

*Pages 195a-195g, inclusive, 48-51, inclusive, 186, 187, 188, 190, 196-201, inclusive, 201d-201h, inclusive:* Alleges that property belonging to plaintiff assessed by the Railway Assessing Board cannot be lawfully taxed in excess of 10 mills for debt service, such levy being contrary to both State and Federal Constitutions; Alleges also the continuance of the present tax levy for debt service will impair the ability of plaintiff to operate its railroad, and will deprive plaintiff of its property without due process of law. *Denied;* these allegations in the amendment to the bill of complaint, make out a prima facie case entitling plaintiff to relief because it imposes an undue burden on interstate commerce.

*Par. e, Page 197d-197f, incl.:* The roads originally constructed with the bonds are a detriment to plaintiff. Taxable values have also decreased, causing more hardship on plaintiff. *Denied;* The allegations in the amendment to the

bill of complaint, make out a *prima facie* case entitling plaintiff to relief because it imposes an undue burden on interstate commerce.

*Page 201h:* Alleges that the excessive revenues in previous years are sufficient to take care of interest and sinking funds and thus it is wholly unnecessary to exceed a levy of ten mills in any one year for any one district. *Granted;* the allegations contained therein are immaterial.

*Pages 190a and 190b:* Allege that the petition for formation of the district was filed and granted on the same day, contrary to Sec. 721, C. G. L. The Board of Public Instruction had no jurisdiction to act on such petition. These questions were not presented at the validation proceedings, and thus not settled there. *Granted;* Validation proceedings cured such defects, they being procedural and not constitutional. Plaintiff is now estopped from raising these objections.

*Par. a, Page 193a; Par. a, Pages 194a and 194b:* Allege that any levy over 5 mills is void according to Art. XII, Sec. 17, Constitution of Florida. *Denied;* The contract was fixed by bondholders by the terms of said provision as it existed when the bonds were issued.

*Par. b, Pages 193a and 193b:* Alleges that $15,000 bonds were validated under Chapter 6327, Acts of 1911, where it was intended to be under Chapter 6237, Acts of 1911. *Granted;* bonds valid under Chapter 6542, Acts of 1913—Sec. 740 C. G. L.

*Par. c, Pages 193b and 193c; first part of Par. b, Page 194b:* Validation proceedings for $10,000 bonds show the petition for issuance granted March 8, 1921, spread on the minutes of the meeting of April 5, 1921, and the election was held March 19, 1921. *Granted;* Validation proceedings cured these irregularities.

*Last part of Par. b, Page 194b:* Alleges the court did

not obtain jurisdiction because clerk did not comply with Sec. 5107 C. G. L. *Denied;* The notice was not addressed to the citizens and taxpayers of the said Special Tax School District, whereas the notice as published was addressed solely and only "To Whom It May Concern."

*Par. a, Pages 197a and 197b:* Alleges petition for formation of the district and issuance of bonds presented to and granted by County Commissioners on the same day in violation of Sec. 2680 C. G. L. *Denied:* Board of County Commissioners could not have had an opportunity to investigate whether the petition was in fact signed by 25% of the freeholders in the district in the same day that the petition for the formation of the district was filed with the Board and that these irregularities were not cured by the validation proceedings.

*Par. f, Pages 197f and 197g:* Allege State Board of Administration under Chapter 14486, Acts of 1929, certified to County Commissioners for 1933 that there would be sufficient gas tax money to meet the sinking fund requirements of the district. County Commissioners disregarded this advice and levied 15 mills for debt service. *Denied:* Statute, *supra,* is mandatory, and after notification, County Commissioners had no authority to levy the 15 mills.

*Par. b, Page 197b:* Alleges no 30 days publication as required by Sec. 2681 C. G. L. before election can be held. *Granted:* An irregularity in the length of publication of notice cured by validation proceedings.

*Par. c, Page 197b and 197c:* Alleges notice of election did not give description of roads and bridges to be constructed, as required by Sec. 2681, C. G. L. *Granted:* Cured by validation proceedings.

*Par. d, Pages 197c and 197d:* Alleges that questions raised in Pars. b and c next above were not raised in validation proceedings and such proceedings did not com-

ply with Sec. 5107 C. G. L. *Granted:* The notice of the validation proceeding was sufficient to put the citizens and taxpayers of the district on notice of such bond validation suit, although the said notice was merely headed "Notice of Bond Validation Suit."

*Pages 199a-199d, incl.:* Roads constructed from proceeds of the bonds were located in such places as to make a tax for the payment of the bonds illegal as to plaintiff; and that said roads did not cross or touch plaintiff's property at any point, and did not connect with any main highway or start from any town. *Granted:* Said objections were not raised in validation proceedings, and plaintiff has lost any rights it might have to object.

*Pages 201a-201c, incl.:* Allege the taxes levied in 1933 for debt service for Special Road and Bridge District No. 10 Bonds Fund are invalid. *Denied:* These allegations, with all others considered, make a *prima facie* case for plaintiff, and impose an undue burden on interstate commerce; and because the statute involved was mandatory upon the county commissioners, and, after notification by the board of administration that there was sufficient gas tax money to render a levy for debt service unnecessary, the county commissioners thereby had no power to make such levy.

*Pages 190c and 190d:* Allege the district is so shaped as to take in an unreasonable length of plaintiff's railroad, purely for the purposes of taxation. *Granted:* Validation proceedings cured such defects, they being procedural and not constitutional. Plaintiff now estopped from raising these objections.

*Page 201h:* Alleges that Sec. 966 C. G. L. violates due process clauses of both State and Federal Constitutions; and is void as it creates personal liability against plaintiff for all taxes imposed and which Comptroller is required to collect under ths section. *Granted:* The benefits received by

plaintiff from the improvements in the special taxing districts are not confined to the property of the plaintiff located in the special taxing districts, but extend to all of its property in Florida, and therefore, the statute, Sec. 966 C. G. L., authorizing the taxes imposed by the special taxing district to be collected out of any property of the plaintiff located in Florida is valid and does not violate any provision of the State or Federal Constitutions.

*Pages 52 and 53:* Allege that in the levy and assessment of taxes against plaintiff, taxing authorities must assume that not less than 95% of all taxes levied will be collected, and thus produce an excess of amount of money required to be raised and be void as to such excess, as in conflict with Sec. 2303, *et seq.,* C. G. L. *Denied:* The millage levied represented the excess produced because of the failure of the taxing authorities to assume that not less than 95% of all taxes levied and assessed would be collected is void.

*Page 54:* These allegations refer to an excess levy of taxes and the motion is *granted* because they are vague, indefinite, and uncertain, and it is impossible to determine the amount, if any, of the alleged excess.

*Pages 55 and 56:* Allege that all taxes levied to pay time warrants or bonds issued by board of public instruction and payable solely out of general school fund, proceeds to pay teachers and bus drivers for 1932-'33 are void. *Granted:* Court has held in State *ex rel.* Board of Public Instruction of Okaloosa County v. Kennedy, 109 Fla. 153, 147 So. 250, that the time warrants herein issued were for a purpose not prohibited by the Constitution.

*Pages 57, 192 and 193:* The allegations refer to an excess levy of taxes. *Granted;* because the allegations are so

.vague, indefinite, and uncertain, and it is impossible to determine the amount, if any, of the alleged excess.

The order of September 7, *supra,* modified the order first referred to in this opinion and decreed, *inter alia:*

"3. That the order or decree of this Court, bearing date the 28th day of June, A. D. 1938, which reads as follows: 'It is further ordered, adjudged and decreed in respect to pages 61 and 62 that upon the defendant's motion to dismiss, as well as the motion of the intervener, Board of Public Instruction of Duval County, to dismiss and its answer incorporating such motion, that the same is granted in part and denied in part; viz.:

" 'That the bond issue of $100,000.00 be and it is hereby declared to be valid to the extent that the same is supported by 20 per cent of $179,742.00, which is the sum admitted in the answer to be the total assessed value of said Special Tax School District No. 6 of Duval County, Florida, on January 1, 1925, to such proportionate extent the tax is invalid,' be and the same is hereby vacated and set aside.

"4. That the findings made in the decree of validation, a certified copy of which has been filed in evidence herein, are conclusive and binding upon this court in this proceeding upon the question of whether the bonds issued exceeded the constitutional debt limit as provided in Section 17. of Article XII, as amended, of the Constitution of Florida, and that said bond issue of One Hundred Thousand Dollars ($100,000.00) be and it is hereby declared to be valid."

The appellant has presented eight (8) questions for our consideration, as follows:

"Question I. A debt service levy in excess of ten mills against the property in a Special Road and Bridge District of a railroad engaged in both intrastate and interstate commerce is not invalid on the ground that it is a burden on in-

terstate commerce, where there is no discrimination as to millage between the railroad property and other property in the district, and no property of the railroad not within the jurisdiction of the taxing power of the district is included.

"Question II. A debt service levy in excess of ten mills against the property in a Special Tax School District of a railroad engaged in both intrastate and interstate commerce is not invalid on the ground that it is a burden on interstate commerce, where there is no discrimination as to millage between the railroad property and other property in the district, and no property of the railroad not within the jurisdiction of the taxing power of the district is included.

"Question III. A taxpayer is estopped to contest the validity of taxes levied to pay principal and interest on bonds issued by Special Tax Districts some ten or fifteen years prior to the year in which the taxes are contested.

"Question IV. A railroad may not resist the levy of all taxes in excess of ten mills for debt service purposes in road and bridge districts many years after the formation of the district and the issuance of bonds on the grounds that the roads constructed with proceeds of the bond issues are of no benefit to it and that they deplete railway traffic.

· "Question V. The imposition on railroads of a tax exceeding ten mills for debt service in Special Road and Bridge Districts is not invalid because of an alleged discriminatory ad valorem system.

"Question VI. Where a petition of electors in a Special Tax School District praying that bonds be issued pursuant to the provisions of Section 720 C. G. L. is filed with the Board of Public Instruction on a certain date and on the same day the board determined by resolution the amount of the bonds required for the purposes set forth in the petition and the other data required by Section 721 C. G. L., and

ordered an election as required by Section 723 C. G. L., the bonds issued as a result of such election are valid.

"Question VII. A millage in excess of five mills for the payment of Special Tax School District Bonds issued at the time Section 17 of Article XII of the Constitution limited the millage to five mills is not valid when levied subsequent to the amendment removing the five-mill restriction but on a bond issue exacted prior to the removal of the five-mill restriction.

"Question VIII. Where the Board of County Commissioners in the levy of taxes anticipates a collection of less than 95% of the taxes imposed, this failure on the part of the board to follow the 95% rule does not render void the additional taxes imposed upon property of a particular taxpayer."

The appellee, cross appellant, presents fifteen (15) questions, as follows:

"Question 1. Whether by reason of the commerce clause of the Federal Constitution and federal laws enacted in pursuance thereof, and by reason of the prevention of abuse clause of the State Constitution (Sec. 30, Art. XVI), there is and may be enforced by a court of equity, a 'rule of reason' limitation, or 'ceiling,' for debt service levies for special local purposes, to the end that the public may continue to receive adequate and efficient public service by the appellee railroad as carrier of intrastate and interstate commerce.

"Question 2. Whether or not more than 10 mills per annum for each local debt service purpose is a proper yardstick of reasonableness which may be adhered to and enforced by a court of equity when the 'whole picture' as disclosed by the bill, is applied to a railroad carrier?

"Question 3. Did the subsequent complete payment in

1935 of the bonds of Special Road and Bridge District No. 8 of Levy County show that the contested 5 mills levied for that district in 1933 (10 mills having been paid) was unnecessary and therefore unreasonable and now unenforceable?

"Question 4. Were the certificates of the State Board of Administration issued in May, 1933, as to no necessity for any ad valorem levy for Special Road and Bridge Districts 3 and 10 of Levy County binding upon the Board of County Commissioners, with the result that the 5 mills now contested by the railroad (10 mills having been paid in each case) as to each of said districts for that year was unnecessary, unreasonable, illegal and now unenforceable?

"Question 5. When it appears that funds coming into the hands of the board of administration and made available for the liquidation of special road and bridge district bonds have in subsequent years been adequate in that behalf without any ad valorem levies in excess of 10 mills, may debt service levies in excess of 10 mills, made in 1933, be now enforced, especially after other delinquent taxpayers have escaped payment entirely through the operation of the Murphy Act?

"Question 6. Whether either under Chapter 10399, Special Acts of 1925, creating Special Road and Bridge District No. 4 of Clay County or under the general law now Sections 2688 to 2692, Compiled General Laws, applicable to that and all other such districts, the railroad may be assessed and forced to pay debt service levied for such district, on rolling stock and other personal property sought to be allocated to such district by a State assessing board and not actually situated within such district.

"Question 7. Were the taxing authorities of Levy County authorized to levy any debt service tax for bonds of

Special Tax School District No. 6 of that county before such bonds were issued by sale and delivery? Also whether such school district was ever legally created?

"Question 8. Did the constitutional limitation of 5 mills and the statutory limitation of 5 mills applicable to debt service for special tax school district bonds issued between November, 1912, and November, 1924, become a part of the bond contracts, for the protection of taxpayers in such cases, which could not, as to bondholders or taxpayers, be abrogated by subsequent constitutional amendment or other legislation without doing violence to the contract clause of the Federal Constitution?

"Question 9. Were Special Tax School Districts 7, 16 and 4 of Levy County and Special Road and Bridge District 3 of Levy County legally organized and the bonds thereof severally legally authorized? Also, were validation proceedings as to said districts severally effective to cure organic or jurisdictional illegalities?

"Question 10. When a single issue of bonds for a special tax school district is petitioned for, voted for and sold in an amount which exceeds '20 per cent of the assessed value of the taxable property of such district according to the last assessment for State and county purposes prior to the issuing of such bonds,' is the whole issue void so much so that a subsequent validation decree will be ineffective to give validity to the whole or any part of such bond issue?

Question 11. Did lack of original benefits to the railroad from the construction of roads with district bonds now being liquidated with State gas tax, and the transition from the county-district system to the State-Federal system, whereby practically all county-district highways have been abandoned or rebuilt and whereby practically all highways

are now being maintained as subsidized competitors of the railroads, make the further imposition of district debt service levies upon railroads unreasonable, arbitrary and discriminatory in violation of the due process clauses and equal protection of the laws clauses of the State and Federal Constitutions?

"Question 12. ·Did arbitrary boundaries of districts, the operation of the Homestead Exemption Amendment, the operation of the Murphy Act and the operation of other statutes favoring general taxpayers as against railroads, cause the excessive debt service levies complained of in Clay, Duval and Levy Counties, to be unconstitutional discriminations against the appellee railroad?

"Question 13. Are counties and their assessing boards mandatorily required in the preparation of budgets to· apply the 95 per cent rule defined by Section 2303, *et seq.*, Compiled General Laws?

"Question 14. Whether Section 966, Compiled General Laws, as applied to the enforced payment of special road and bridge district taxes and other taxes in the nature of special assessments is void because effective to deprive the appellee and other railroads similarly situated of their properties without due process of law.

"Question 15. Whether, upon this record, it appears that the railroad as a public agency is precluded by any doctrine of estoppel from complaining of violation of its rights secured by organic State law, or organic Federal law, or precluded from insisting upon statutory rights not involved in the proceedings relied upon as working' an estoppel?"

It must be borne in mind that there is a clear distinction between the status of a tax levied for special benefits and that of a tax levied in a special district as a general tax of the district for public improvements. This case involves,

as heretofore said, a tax levied to produce funds to meet obligation of bonds issued by Special Tax Road and Bridge Districts and taxes levied produce funds to meet the obligation of bonds issued by Special Tax School Districts. There is involved here no levy for special benefits to property abutting on streets or highways and, therefore, it is not necessary to consider or discuss legal principles applicable in such cases.

We shall now discuss the questions presented by briefs in the order outlined above.

As to Question 1: Mr. Cooley in his Volume 1, 4th Ed., Sec. 384, states:

"Property within the State, although belonging to persons or corporations engaged in interstate or foreign commerce, or used in interstate commerce, is taxable by the State, regardless of whether the commerce is by land or water, provided the property is not actually in transit. Interstate commerce is not taxed by taxing the property within the State devoted to such use. Whatever its form, if such a tax is essentially only property taxation and is not discriminatory, it does not violate the commerce provision. 'Although the transportation of the subjects of interstate commerce, or the receipts derived therefrom, or the occupation or business of carrying it on, cannot be directly subjected to State taxation, yet property belonging to corporations or companies may be; and, whatever the particular form of the exaction, if it is essentially only property taxation, it will not be considered as falling within the inhibition of the constitution. Corporations and companies engaged in interstate commerce should bear their proper proportions of the burdens of the government under whose protection they conduct their operations; and taxation on property, collectible by the ordinary means, does

not affect interstate commerce otherwise than incidentally, as all business is affected by the necessity of contributing to the support of the government.

"For instance, railroad companies, steamship companies, express companies, telegraph companies and interstate bridge companies, may be taxed on that part of their property, which is within the territorial boundaries of the State, without violating the commerce clause. Of course, it is necessary, in order to subject to State taxation the property of corporations engaged in foreign or interstate commerce, that such property be within the jurisdiction of the State. * * *"

To the same effect is the statement of Mr. Gavit in his work, The Commerce Clause, Sec. 190.

In St. Louis and S. W. Ry. Co. v. Nattin, 277 U. S. 157, 48 Sup. Ct. 438, 72 L. Ed. 830, the Supreme Court of the United States said:

"In Louisiana the police jury, subordinate to the State Legislature, is the governing body of the parish. A statute of the State empowers these juries to create road districts from such portions of their parishes as they may determine and, with the approval of a popular vote, to construct roads and issue bonds to pay therefor.

"The validity of this statute is challenged upon the ground that it fails to provide the taxpayer with proper opportunity to be heard. A sufficient short answer is that under the repeated decisions here this is not essential. Valley Farms Co. v. Westchester County, 261 U. S. 155, 67 L. Ed. 585, 43 Sup. Ct. Rep. 261; Hancock v. Muskogee, 250 U. S. 454, 63 L. Ed. 1081, 39 Sup. Ct. Rep. 528. But here in fact the appellant had abundant opportunity to present objections to the proposed plan.

"We find nothing in the Constitution of Louisiana, when

reasonably construed, which inhibited the collection in 1926 of a tax partly intended to supply funds to meet installments of principal and interest upon bonds maturing in March, 1927.

"As the assailed tax was general and ad valorem, its legality does not depend upon the receipt of any special benefit by the taxpayer."

To the same effect is Johnson Oil Refining Co. v. State of Oklahoma, 290 U. S. 158, 54 Sup. Ct. 152, 78 Law Ed. 238. See also Western Union Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 10067; Leloup v. Port of Mobile, 127 U. S. 640, 32 Law Ed. 311, 8 Sup. Ct. 1380; State *ex rel.* Gottlied v. Western Union, 165 Mo. 502, 65 S. W. 775, affirmed in 190 U. S. 412, 23 Sup. Ct. 731; Pullman Palace Car Co. v. Pa., 141 U. S. 18, 35 L. Ed. 613, 11 Sup. Ct. 876; Postal Telegraph Cable Co. v. Adams, etc., 155 U. S. 688, 15 Sup. Ct. 268, 39 L. Ed. 311. See also the late case of Sou. Pacific Co. v. Gallager, *et al.,* 59 Sup. Ct. 389.

We have found practically no contrary decisions and, therefore, we hold that the tax involved is not a burden on interstate commerce.

It is contended by appellee that Section 30, Article XVI of our Constitution, which is as follows: "The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures." —is in effect a constitutional mandate requiring legislative compliance therewith and enjoining the enactment of laws sanctioning the alleged evil complained of on the theory that the laws permitting an assessment of more than ten

mills ad valorem taxes for debt service on the property of a railroad company located in one or more special road and bridge districts to meet the bond obligations of such district, or districts, and the laws permitting a levy of more than ten mills ad valorem for debt service on the property of the railroad company located in a special tax school district constitutes unjust discrimination and excessive charges against the railroad company. The above quoted section of the Constitution has no application to the matters involved here and it would unnecessarily prolong this opinion, which must be too voluminous at best, to go into further discussion of this contention.

It therefore follows that the question involved in appellant's statement number 1, *supra,* must be resolved in favor of appellant and we hold that the bill of complaint does not state grounds for equitable relief in this regard.

Question 2 stated by appellant may be considered as embraced in Question 2 stated by appellee. We might say that what we have said in regard to Question 1 applies with like effect to the question here under consideration and in support of this we cite the case of Paducah-Illinois Ry. Co. v. Graham, 46 Fed. (2d) 806, in which Judge DAWSON said:

"I cannot agree, however, with the plaintiff's contention that the challenged tax must be treated as a special assessment or local improvement tax. It has none of the features of such a tax. It is a general tax levied upon the assessed value of all the property in the district, without regard to the benefits accruing to the property taxed. As such a general ad valorem tax, its legality does not depend upon the receipt of any special benefit by the taxpayer of his property. St. Louis & S. W. Ry. Co. v. Nattin, 277 U. S. 157, 48 S. Ct. 438, 72 L. Ed. 830.

"The claim of the plaintiff that the tax amounts to an illegal regulation of interstate commerce is equally without merit. St. Louis & S. W. Ry. Co. v. Nattin, *supra.*"

Section 17 of Article XII of the Constitution authorizing issuance of bonds by Special Tax School Districts provides:

"Whenever any such Special Tax School District has voted in favor of the issuance of such bonds a special tax for the payment of the interest on said bonds and the principal thereof as the same shall become due and payable, shall be levied on the taxable property, within the district voting for their issuance in accordance with law, providing for the levy of taxes and such tax shall not be applied to any purpose other than the payment of the principal and interest of said bonds. (Additional Section, Joint Resolution 76, Acts 1911; adopted at general election 1912. Amended, Senate Joint Resolution 333, Acts 1923; adopted at general election 1924.)"

These questions must be answered in harmony with the contentions of the appellant.

The appellant has appended four sub-paragraphs under his argument of Question 3, stating the grounds on which appellee bases its contention in this regard as follows:

"(a) As to highways; because they are of no benefit to the railroad, but deplete railway traffic;

"(b) As to highways; because unnecessary;

"(c) As to highways and schools; because of a discriminatory ad valorem system;

"(d) Because of the public nature of the railroad business." This was done because the appellee had contended in the lower court that the railroad company might contest the validity of the tax levy for the reasons stated in the four sub-paragraphs, while the appellant contended in the court below that the taxpayer was estopped to contest the

validity of the taxes under the conditions named in that question.

The bonds in Special Road and Bridge District No. 1 in Clay County were issued in 1915 and the bonds in Special Road and Bridge District No. 2 in Clay County were issued in 1919, 1920 and 1927. The bonds in Special Road and Bridge District in Levy County were issued in 1922 and the bonds in Special Road and Bridge District No. 8 in Levy County were issued in 1923. The bonds in Special Road and Bridge District No. 10 in Levy County were issued in 1925 and were validated by Legislative Act in 1927. The bonds were issued in Special Tax School District No. 7 in Levy County in 1922. The record shows that all the bonds were issued and validated some ten years prior to the tax levy here complained of.

It is unnecessary to here quote the various statutes authorizing special road and bridge districts and special tax school districts to issue bonds. It is sufficient to say that the bill of complaint in the instant case shows that the complainant had full notice, actual or constructive, of all acts and proceedings relating to the formation of the districts and the issuance of bonds of such districts and that it also had full notice, actual or constructive, of the proceedings pertaining to the validation of the bonds and has had full opportunity to offer any objections thereto or to the inclusion of its property within the districts issuing the bonds. The plaintiff does not allege that it has taken advantage of any of its opportunities to make timely objection and, therefore, we may presume that no such objections were made. See Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 Sou. 897; Pinney v. Pinney, 46 Fla. 559, 35 Sou. 95; A. C. L. R. Co. v. Benedict Pineapple Co., 52 Fla. 165, 42

Sou. 529; Abel v. Town of Boynton, 95 Fla. 984, 117 Sou. 507; City of Ft. Myers v. State, 95 Fla. 704, 117 So. 97.

On authority of the above cases we hold that the complainant was estopped and precluded from attacking the assessment against him upon the grounds here referred to in a proceeding of this character.

Question No. 4, *supra,* as stated by the appellant, is embraced within Question No. 11, *supra,* stated by appellee. The assignments of error on which this question is based involve the millage levy in several special road and bridge districts and the allegations in the bill of complaint are to the effect that the roads in question were of no benefit to the railroad, the allegations being varied as to each district, but the effect being the same. It is unnecessary to quote the allegations of the bill. The allegations reveal that the contention is based upon the theory that the railroad does not receive benefits from the improvement for which the bonds were issued equal to the assessments levied, or that it receives no benefit from the improvement but suffers a detriment. The districts involved are created pursuant to Chapter 6208, Acts of 1911, being brought forward as Sections 1647 to 1666 R. G. S., 2679 to 2698 C. G. L.

In Hopkins v. Special Road and Bridge District No. 4, 73 Fla. 247, 74 Sou. 310, Chapter 6208, *supra,* as amended by Chapter 6879, Acts of 1915, was under discussion and, referring thereto, this Court said:

"These and other provisions clearly indicate a legislative intent to provide for the establishment of permanent territorial subdivisions of counties and to make the "construction, repair, and maintenance' of 'permanent roads and bridges' in such subdivisions a governmental purpose and function. This being so, the taxes levied under the acts are for a governmental purpose within the power of the legislature,

and no question of special assessments for local benefits is presented.

"In this view, the acts are an exercise of the taxing power in a manner and for a purpose not forbidden by the Constitution, and the limitations as to notice and benefits that may be incident to local assessments for special benefits to property are not applicable. The statutes do not violate the limitations of the organic law of the State upon the taxing power of the Legislature; and other limitations suggested do not control. The statutes are in aid of the general policy of the road and bridge laws of the State.

"The cost of construction and maintaining the roads and bridges are not borne by 'assessments upon the lands benefited;' but the expense is met by a tax levy upon all the taxable property in the district.

"In authorizing the formation of Special Road and Bridge Districts in the county, the Legislature may adopt any method it chooses, no constitutional limitation being thereby violated."

To like effect, see case of Lainhart v. Catts, *et al.,* 73 Fla. 735, 75 Sou. 47.

It appears to us that the questions have been definitely answered by this Court in conformity with the contentions of the appellant in the case of Jenkins v. Entzminger, 102 Fla. 167, 135 Sou. 785, where we said:

"Historically, the power of the Legislature to establish taxing districts for particular public purposes is clear. It is only necessary that such districts be created directly by the Legislature or that they be created by a proper proceeding under authorization by a valid statute, including notice and hearing in the latter instance. See Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763. In particular cases a special taxing district should not be held invalid if

the law itself (in the case of a district directly created by the Legislature) or the action authorized to be taken or threatened under a statute providing for the existence of the district, is not illegal or a palpably arbitrary or a plain abuse of power.

"Taxing districts have generally been of two principal classes. The first of these is for the accomplishment of some particular public improvement where the character of the work necessary to realize the improvement is peculiarly temporary and special or where there is necessarily a particular improvement confined to some special work or construction. In such cases the taxing district itself is viewed as a mere instrumentality to distribute present cost according to assumed benefits and if the effect is to impose a grossly unjust or unequal burden on some of the property taxed, though benefited, relief will be given in the special case. Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280; Willis v. Boad & Bridge District, 73 Fla. 446, 74 Sou. 495; Thomas v. Kansas City Southern Ry., 261 U. S. 155; Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330.

"The second class of taxing districts is where the purpose of creating the district is clearly general and permanent in nature. In such a district the fact that one taxpayer's benefit to a particular piece of property may be remote or doubtful, or his burden heavy, will not entitle him to relief against an authorized tax levied to bring about common and general benefits to the district and property situated therein, considered as a whole.

"In this class of taxing district the common, general or indirect benefit to the taxpayer arising from ownership of property in the benefited district itself, is deemed a sufficient constitutional benefit to support the levy and collection of an ad valorem tax spread over the entire district, particularly

when the taxpayer necessarily has a remoter local or political interest in the general public welfare of the locality as enhanced by the public improvement contemplated to be brought about by the instrumentality of the district.

"Martin v. Dade Muck Land Co., *supra;* Houch v. Little River Drainage District, 239 U. S. 254, 60 L. Ed. 266; Valley Farms Co. v. Westchester, 261 U. S. 155, 67 L. Ed. 585; Milheim v. Moffatt Tunnel District, 262 U. .S. 710; 67 L. Ed. 1194; Miller & Lux v. Sacramento Drainage District, 256 U. S. 129; 65 L. Ed. 859; Spencer v. Merchant, 125 U. S. 345, 31 L. Ed. 763."

The districts here involved come within the second class mentioned in that opinion.

So, in cases of this sort, we hold that the railroad company may no more contest the tax because of the lack of benefit to that particular class of property which it owns than could any other taxpayer contest the assessment upon the same or like ground. There is a general benefit flowing to all property within the benefited area by the construction of public highways and public schools and all the property within that benefited area, whether it be of such a class of property as to be materially affected by the improvement or not, must pay its proportion of the tax based upon ad valorem value.

We next come to question numbered 5 stated by appellant, *supra.* The plaintiff, appellee here, urged in the court below and urges here that Special Road and Bridge District and Special Tax School District tax levied for debt service in excess of ten (10) mills are unreasonable and unenforceable because of our discriminatory ad valorem system. It is contended that the amendment to Section 7, Article X of the Constitution adopted in 1934 exempted certain homesteads from taxation except for assessments for benefits;

that Chapter 16252, Acts of 1933, provided for the redemption of delinquent tax certificates with bonds and provided for certain delays and postponements of the enforcement of liens for delinquent taxes; that Chapter 18296, Acts of 1937, generally known as the Murphy Act, provided for the sale of tax certificates together with subsequent omitted or levied taxes at auction at the highest bidder, and that Chapter 15053, Acts of 1931, provided for moratorium of foreclosure of tax sale certificates for two years except certificates upon homesteads and on those for a period of four years from the dates of the certificates; and that the plaintiff railroad company, nor its property, received any benefits under this constitutional or either of these constitutional provisions; that as a result of this constitutional amendment and these legislative Acts, the larger part of the tax burden has been thrown upon the railroads rather than upon taxpayers generally.

The tax levies here involved were made prior to 1934 when the homestead exemption amendment was adopted, and prior to the enactment of Chapter 18296, *supra*. But, even if they had both been adopted prior to the 1933 assessment, we do not think their adoption would have affected the present case.

It may be that the homestead amendment above referred to is discriminatory but if it is, it is a constitutional and not a statutory discrimination and, the Murphy Act having been repeatedly held valid, it can not be successfully used to evade taxes not involved in its provision. The railroad company is in the same situation as other taxpayers. It is in the position that every other good taxpayer who paid his taxes in full and continues to pay his taxes in full, found himself in by reason of not having allowed his taxes to become delinquent.

In State *ex rel.* Havana State Bank v. Rodes, etc., 116 Fed. 824, 157 Sou. 33, we said:

"The statutes of Florida as they now exist contemplate no increase in the levy of taxes merely because taxes in past years have either been slow in payment or for some reason have been allowed to go unenforced. So long as taxable properties are not technically 'off the tax books' by being embraced in State tax certificates, the taxes on which are not to be extended under Section 984 C. G. L., 769 R. G. S., they are to be included in assessed valuations and amounts of tax levies based thereon are to be computed under the budget law as an anticipated tax 'realization,' either by enforcing or collecting the taxes levied, up to 95% of the levy as made.

"Every taxpayer obviously has an interest in enforcing payment of taxes by others equally liable to the payment of taxes. (State *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. Rep. 333.) With respect to governmental obligations and appropriations required to be made with which to operate the government, all taxpayers are, as it were, sureties for one another. (State *ex rel.* Soutter v. Common Council of Madison, 15 Wis. 30 [Text p. 33].) The failure of some taxpayers to pay their taxes when due inevitably results, of course, in a greater burden of taxation being borne by the faithful who may be required on successive, but not cumulative, tax levies to make up for deficits and delinquencies. The duty to pay a public obligation ends only when the whole money is collected and the debt actually paid. It does not cease with the levying of one tax which is in part unsuccessful. The evils resulting from this age-old, but lawful, inequity are to be obviated by the rigid enforcement of the tax laws, the penalizing of those who transgress their provisions and the election of

faithful and competent officers, as the Supreme Court of Wisconsin in the last cited case has pointed out.

"But the levies of taxes to cover deficits arising from delinquencies are not to be prospectively anticipated under our present statutes through cumulative levies, but rather by successive levies should the latter be required to raise the revenues essential to pay off debts and appropriations as to which the revenues provided to be raised have not fully realized."

And so we hold that in this regard there is no equity in the bill.

Question No. 6 presented by appellant is based upon an action of the chancellor in holding the bond issue invalid. It is contended in the bill of complaint that taxes paid to provide interest and principal on bonds issued by Special Tax School District 16 of Levy County was void because the petition for the issuance of the bonds was received, filed, granted and ordered entered for publication of a notice of the election all on the same day and that under the law the petition should not have been acted upon, or the election called, until the next meeting of the board after the petition was filed.

Sec. 579 R. G. S., 720 C. G. L., provides, *inter alia:*

"Whenever the residents of a special tax school district in any county in this State shall desire the issuance of bonds by said special tax school district for the purpose of acquiring, building, enlarging, furnishing, or otherwise improving buildings or school grounds or for any other exclusive use of the public free schools within any such special tax school district, they shall present to the county board of public instruction of the county in which the said district is located a petition signed by not less than twenty-five per cent of the duly qualified electors residing within the said

special tax school district, setting forth in general terms the amount of the bonds desired to be issued and the purpose thereof and that the proceeds derived from the sale of such bonds shall be used for the purposes set forth in the said petition."

Section 580 R. G. S., 721 C. G. L., provides as follows: "At their first meeting after the receipt of the said petition the county board of public instruction shall determine by resolution to be entered in its records what amount of bonds is required for the purposes set forth in the said petition, the rate of interest to be paid thereon and the time when the principal and interest of such bonds shall be due and when payable."

Section 581 R. G. S., 722 C. G. L., provides that it shall be the duty of the board of public instruction, upon adopting resolution providing for (in Sec. 721 C. G. L.) forthwith to cause the said resolution to be published once a week for four consecutive weeks in some newspaper in such district, if there is a newspaper published therein, and if no newspaper is published in the district then to be published in a newspaper published in the county in which the district is located.

Section 582 R. G. S., 723 C. G. L., provides, *inter alia:*

"The said county board of public instruction shall also at the meeting at which is passed the resolution provided for in Section 721, also order that an election shall be held in said special tax school district to determine whether or not there shall be issued by said district the bonds provided for in said resolution * * *."

Like provisions are found in Sections 1647 R. G. S., 2679 C. G. L., and 1648 R. G. S., 2680 C. G. L., and in 1649 R. G. S., 2681 C. G. L., in reference to creation of

special road and bridge districts and the issuance of bonds by such districts.

The question presented is whether or not the verbage of the statute, "at their first meeting after the receipt of the said petition," is to be construed as requiring the acting board to lay the petition over to a subsequent meeting, if it be presented during a meeting of such board, to vest such board with jurisdiction to proceed under the statute, or whether it is to be construed as giving the board jurisdiction to act immediately upon such petition, if it be presented during a meeting of the board.

It appears to us that if it were the legislative intent to require a petition to lay over until a subsequent meeting that some definite language would have been used to indicate that intent. As we construe the language, it expressed the legislative intent that the petition should be acted upon at the earliest practicable time and that it was not the legislative intent to require the petition to be laid over until a future date. This must be true because there appears to be no reason for the petition to lay over. The public is advised of the petition and the action of the board by the publication of notice given under provisions of Section 581 R. G. S., 722 C. G. L. Like statutes have been construed in other jurisdictions in conformity wtih this view.

In the case of Sledge v. State, 269 Pac. 385, the Court of Appeals construed a criminal statute providing that in a change of venue the cause must be docketed and stand for trial at "the first term of court after the cause has been transferred." It was contended by the appellant that the above quoted clause means that a term of court must intervene between the transfer and the trial of the cause and that the District Court of Jefferson County, Oklahoma, was without jurisdiction to try the cause before the next term

after the cause had been transferred. The Court of Appeals did not agree with this view and said, "It is clear that by the words 'first term of court' used in the statute was meant the term at which the case was transferred and docketed on the change of venue. Otherwise stated, the words 'the first term' means the immediate term, the present term, as contrasted with the phrase 'next term' meaning a succeeding term."

In the case of A. C. L. Ry. v. Ga. Sweet Potato Growers, 171 Ga. 30, 54 S. E. 698, the Supreme Court of Georgia considered the construction to be placed on paragraph 6 of Section 2 of Article VI of the Constitution of that State and said: "The Supreme Court shall dispose of every case at the first or second term after such writ of error is brought and in case the plaintiff in error should not be prepared at the first term to prosecute the case * * * unless prevented by providential cause * * * it should be stricken from the docket and the judgment below shall stand affirmed." The court held that the Constitution imperatively required that all cases brought to the Supreme Court or the Court of Appeals should be heard at the first term, unless continued for providential cause, and said:

"If case transferred by Supreme Court to Court of Appeals is received before closing of docket, such term is 'first term' of court of appeals, but if received after close the next term is first term."

See also Mansur v. County Commissioners of Aroostook County, 83 Me. 514, 22 Atl. 358, in which it was held:

"The Statute (Rev. Stat. c. 6, No. 78) provides, that when a road is laid over lands not within any town or plantation required to raise money to make and repair highways, the county commissioners shall, at the first regular session thereafter, assess thereon, and on adjoining

townships benefited thereby, such an amount as they judge necessary for making and opening the road. *Held* that the assessments are to be made at the same regular session at which the location of the road is filed; the object of the statute being to prevent their being made at an adjourned ·term of such regular session."

We, therefore, hold that no lack of jurisdiction is shown by the allegations of the bill of complaint and that it was competent for judicial decree of validation of the bonds to set at rest any questions of fact which were, or might have been, brought in issue in such proceeding. See Board of Public Instruction of Dade County, 121 Fla. 700, 164 So. 797.

Question No. 7 stated by appellant was involved and considered by us in the recent case of State v. Special Tax School District No. 7-B of Santa Rosa County, 131 Fla. 603, 179 Sou. 683; and in Board of Public Instruction of Palm Beach County v. State, 130 Fla. 366, 177 Sou. 615.

It is unnecessary for us to say more than was said in those cases, except to add that the question of contract is not involved. It may be that a change in the bond contract has been effectuated which inures to the benefit of the bond-holder by a change in the Constitution adopted by the people, and to which the State, all its political subdivisions and its taxpayers, by its adoption assented and, by such assent, they are bound.

Question No. 8 stated by appellant we must answer in the negative. The question involves the determination of the force and effect to be given the provisions of Sec. 1524 R. G. S., Sec. 2302 C. G. L., and Sec. 1525 R. G. S., and Sec. 2303 C. G. L. The pertinent part of the latter section is:

"It shall be unlawful for the board of county commis-

sioners to expend or contract for the expenditure in any year, October 1st to September 30th to be considered such year, more than ninety-five per cent of the estimated revenue of such year, ascertained and determined in accordance with Section 2302, and ninety-five per cent of the taxes levied for the year unless more than ninety-five per cent should be collected. * * *"

This statute is a limitation on the budgeting and conditionally a limitation on expenditures and is directory as to the levy and assessment of taxes. It may impose such a limitation on the board of county commissioners that its violation would be enjoined in proper proceedings, but the appellee did not so move. It waited until the assessment was completed and until the tax had become delinquent, then moved in a court of equity for relief against a burden which had been imposed alike on all taxpayers.

The purpose of the statute here under consideration was to preclude county commissioners from incurring obligations in excess of the anticipated revenues unless the actual collections exceeded the anticipated collections.

Appellee relies with apparent confidence on our opinion and judgment in State *ex rel.* Havana State Bank v. Rodes, *supra.* We do not construe the opinion in that case as holding that compliance with the above quoted provisions of Section 1525 R. G. S., Sec. 2303 C. G. L. to be jurisdictional. That was a proceeding in mandamus to compel the Board of Commissioners of Brevard County to levy a tax sufficient to pay bonds held by the bank. A levy was made on the basis of anticipating a 95 per cent collection. The bank claimed that based on past experience the levy would yield only about 50 per cent of the taxes and, therefore, insisted that the millage should be increased from 4 to 8 mills. We held in effect that it was the duty of the board to antici-

pate 95 per cent collection of the taxes and it was not a duty which could be enforced by mandamus to anticipate less than 95 per cent collection. It appears to be a well settled rule in this jurisdiction that after a tax has been imposed and after it has become delinquent, unless the levy and assessment is void, the taxpayer, in order to get relief, must make a clear showing that the method of assessment affected the taxpayer otherwise, or differently than other taxpayers like situated, or that it has placed upon the taxpayer some other greater proportionate burden than upon others. See State *ex rel.* Havana State Bank v. Rodes, *supra;* City of Tampa v. Palmer, 89 Fla. 514, 105 Sou. 115; Folsom, *et al.,* v. Bank of Greenwood, 97 Fla. 426, 120 Sou. 317; West Va. Hotel Corp. v. Foster, 101 Fla. 1147, 132 Sou. 482.

In a note appended to our opinion in the Havana State Bank case, *supra,* we said:

"But, see Chapter 14572, Section 1, which provides that a failure to comply with procedural statutes of this character does not constitute any defense against the enforcement of the tax, the remedy to the taxpayer for a default in this respect being by mandamus to compel the responsible officers to proceed according to law. State *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. Rep. 333."

Under the showing made by the allegations of the bill of complaint we held that the tax here complained of is not void and, therefore, the complainant was not entitled to relief as prayed.

This brings us to consideration of questions propounded by appellee, cross-appellant.

The first and second of these questions have been answered contrary to the contentions of appellee and no further discussion is necessary as to such questions.

The third question is in effect whether or not the complainant will be required to pay a tax assessed for debt service valid when levied if it be shown during the pendency of the suit that the obligation for which the tax was levied has been fully paid and discharged with funds acquired for that purpose after the contested levy was made. We think there can be but one answer to this question and that is, that the complainant by contesting the assessment has delayed the collection of the tax until that time when the necessity for the tax no longer exists. When the obligation was discharged the tax levy was discharged.

The same reasoning must be applied in answering appellee's question No. 4, for the reason that if the certificate of the State Board of Administration issued in May, 1933, shows that there was no necessity for any ad valorem levy for Special Road and Bridge Districts No. 3 and No. 10 of Levy County, that certificate was binding on the board of county commissioners and it was their duty to refrain from assessing any millage for debt service for that year, because where there is no necessity for the levy there is no authority to make the levy.

Appellee's 5th question presents a different proposition, as heretofore held in this opinion. The levies made in behalf of the affected districts in 1933 were valid when made and it was the duty of the complainant in the court below, appellee here, to bear its burden along with others to meet the necessities of that year (see State ex rel. Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. 333) and it cannot escape that burden by showing that no ad valorem levies were necessary in the years 1935, 1936 and 1937. It has the same advantage of that condition which other taxpayers had and if, at the late date, it pays the taxes due for 1933 the fund so contributed will be available to apply to the same

obligation, though not to the same period, that it was then applicable to.

We may say in passing, however, that we fail to find where this question was presented to the lower court. Neither was the matter involved in appellee's Question No. 6 presented to the lower court nor do we find it involved in the pleadings. Therefore, we shall not discuss it.

The same applies to appellee's Question No. 7.

Appellee's Question No. 8 has been heretofore answered in this opinion.

Appellee's question No. 9 has been answered in this opinion in harmony with the holding of the lower court. In support of our holding, however, we cite the case of Board of Public Instruction of Dade County v. State, 121 Fla. 703, 164 Sou. 797, as to the efficacy of a decree vadidating Special Tax School District Bonds.

Appellee's Question No. 10 is to be answered as is Question No. 9.

Appellee's Question No. 11 has heretofore been answered in discussing questions presented by the appellant.

Appellee's Question No. 12 was answered by us in discussing appellant's Question No. 5.

Appellee's Question No. 13 has been heretofore discussed and answered.

Question No. 14 was answered by the lower court contrary to the contention of appellee.

It is alleged in the bill of complaint in effect that Section 753 R. G. S., 966 C. G. L., is unconstitutional because it violates the due process clause of the State and Federal Constitutions and because it, in effect, creates a personal liability against the plaintiff for all taxes which may be called for by the warrant the Comptroller may issue against

the plaintiff pursuant to the terms of that statute. The statute provides:

"The Comprtoller shall have the power upon the receipt of the certificate or certificates from the tax collectors as aforesaid to issue a warrant directed to the sheriff of any county where such defaulting railroad or any part thereof may be located, commanding him to collect by levy and sale, in the same manner as is now provided by law for the sale of property under execution from the clerk of the circuit court, of the shop fixtures, rolling stock or any part thereof as may be located in this State, the full amount of taxes due thereon, or of the entire road or such part thereof, including the costs and expenses of sale, and the proceeds of such sale, after deducting the fees and costs as provided by law, shall be forwarded by such sheriff to the Comptroller, who shall pay the State taxes into the State treasury, and the county taxes and district school taxes and other special taxes to the county depository of each county in which such taxes were assessed, according to the assessment, and the surplus after such payments are made, if any, shall be paid over to the authorities of such defaulting railroad."

We can not construe the statute as creating a personal liability against the taxpayer. The statute makes the property of the taxpayer liable for the tax referred to in that section and the statute itself, together with the notice required to be served upon the railroad company in this case constitute due process of law. But, even if the statute created a personal liability, we find nothing in the Constitution of Florida, or of the United States, to prohibit the Legislature from making taxpayers liable personally by statutory enactment. See Wilberg v. Wykama Co., 132 Wash. 219, 231 Pac. 931, 41 A. L. R. 184; Broocks v. State (Tex. Civil Appls.), 41 S. W. (2) 714; Brown v. Russell,

20 O. App. 101, 151 N. E. 793; Midland Guaranty & Tr. Co. v. Douglas Co., 217 Fed. 358; Weber Lbr. Co. v. Shaw, 139 Mass. 366, 75 N. E. 640.

Under Section 747 R. G. S., 960 C. G. L., *et seq.*, property belonging to railroads and certain other public service corporations are assessed in a different manner than property owned by other persons or corporations and not used for public service purposes. Under these statutes the assessed value of all property of a railroad company used for railroad purposes is arrived at and determined as an entity by the State Railroad Assessing Board, whereas the assessed value of all other property is fixed by county tax assessors. These statutes are as much for the protection of the public service corporations, such as railroads, as they are for the protection of the public. There is nothing in our Constitution which prohibits this method of taxation nor is there anything in the Constitution which prohibits the enforcng of the payment of these taxes in the manner in which the statutes provide.

The allegations of the bill are not sufficient to show illegality of the tax complained of.

Appellee's Question No. 15 is comparable to appellant's Question No. 3 and we have hereinbefore said all that is necessary to be said in that regard.

For the reasons stated, the decree is affirmed in part and reversed in part as hereinbefore indicated and the cause is remanded to the court below with directions that orders and decrees be entered not inconsistent with the views herein expressed.

The costs of this appeal shall be taxed equally against the appellant and the appellee.

So ordered.

WHITFIELD, CHAPMAN and THOMAS, J. J., concur.

TERRELL, C. J., agrees to conclusion.

BROWN, J., concurs in part and dissents in part.

BROWN, J. (concurring in part and dissenting in part).— The foregoing opinion reverses in part and affirms in part the orders and decrees rendered by Circuit Judge Love, sitting as chancellor in the trial court. I am of the opinion that such orders and decrees should be affirmed in all respects save one, and that is that portion of the ruling below which holds the bond issue of Special Tax School District No. 16 of Levy County to be invalid. On that point, I concur with the majority opinion.

With this exception, I think the action taken by Judge Love should be affirmed.