**CONSOLIDATED NAVAL STORES COMPANY, a Florida Corporation, v. ROY B. HENDRY, et al.**

30 So. (2nd) 617
May 9, 1947
Rehearing Denied June 20, 1947

January Term, 1947
En Banc

*Treadwell & Treadwell,* for appellant.

*R. C. Horne, Lewis H. Tribble, O. O. Edwards* and *J. W. McKinney,* for appellees.

*Henry P. Adair,* as Amicus Curiae.

TERRELL, J.:

Appellant filed its bill of complaint in the Circuit Court of Dixie County, praying, (1) that the tax assessor be enjoined from extending on the tax rolls any ad valorem taxes for the fiscal year ending September 1947, (2) that the tax collector be enjoined from collecting any taxes based on said assessment rolls if already extended, and (3) if the cause be heard before the tax rolls are completed, that the clerk of the Circuit Court and the superintendent of Public Instruction be required to raise their estimates of revenue to be anticipated from race track sources to a sum sufficient to relieve the necessity for imposing any ad valorem taxes on appellant's lands other than the three mill school tax required by the constitution. The temporary injunction was denied; and the bill was dismissed; petition for rehearing was denied and this appeal was prosecuted from the order dismissing the bill and the order denying the petition for rehearing.

The Question presented may be stated as follows: In making up its "estimate of revenue and receipts other than from taxes to be levied reasonably to be expected from the first of October to the 30th of September of the following year," as required by Section 129.01, Florida Statutes Annotated, on what basis should the revenue to be anticipated from race track funds be estimated?

The estimate of revenue and receipts so required is made by the Clerk of the Circuit Court each year and filed with the Board of County Commissioners, preliminary to preparing the county budget. The Superintendent of Public Instruction, on or before July 15th of each year, makes up a similar budget of available balances and requirements of the Board of Public Instruction for the ensuing year and files it with the Board of County Commissioners. With this information in hand it is the duty of the County Commissioners to determine the amount of funds necessary for all County purposes (Section 193.31, Florida Statutes Annotated) and when they have done this, they are required to deduct the sum of the revenue and receipts found available from the amount found necessary for all county purposes and then impose an ad valorem tax on all the taxable property in the county to raise the

balance found necessary to supply the needs of the county government.

There is no question here as to the estimate of revenue and receipts in either case except as to the amount found reasonably to be expected from the race track funds. It is admitted that the estimate of receipts reasonably to be expected from the race track fund is $33,000, and that for the previous year, 1945-1946, the county received $98,000 from that fund. So the real question here is whether or not $33,000 was an amount reasonably to be expected by Dixie County from the race track funds for the year 1946-1947.

The answer to this question turns on the interpretation of Sections 129.01 and 237.09, Florida Statutes Annotated. These statutes define the duties of the Clerk of the Circuit Court, the County Superintendent of Public Instruction and the County Commissioners with reference to preparing the county budget and clothes them with some discretion in making up the estimate of revenue and receipts from different sources. The County Commissioners are further authorized to determine the amount of ad valorem taxes to be imposed for all county purposes. They are also vested with discretion as to this, but always their discretion must be predicated on reason as revealed from substantial facts. It cannot be based on mere fiat or caprice.

In estimating the revenue and receipts from the race track fund at $33,000 the Clerk of the Circuit Court appears to have relied on two factors, viz., (1) a guarantee of that amount to each county, from the general revenue for the years 1941, 1943 and 1945, by legislative act, and (2) that revenues from race track gambling are temperamental and unstable, depending on unpredictable factors, and that consequently any estimate of receipts from that source is a matter of pure guess and speculation.

In our view the first of these factors should have little if any weight in making up the estimate of revenue that any county may get from the race track funds. The legislation guaranteeing these amounts to the counties were emergency measures enacted during the war when the receipts from race track funds were very light. $33,000 was guaranteed to each

county from general revenue because the race track fund produced approximately this amount for each county in its early history and the counties had gotten in the habit of expecting this sum from it. Not only that, but most of the counties would have been seriously handicapped in executing county commitments without such an amount. As to the second factor, it may be that the race track tax has some elements of instability, but so does every other tax. It cannot be gainsaid that the race track tax is a product of legislative wisdom, and being so, it hardly comports with sound logic to contend that it arrives at the county till tainted and unfit company for other tax dollars. It goes as far on a teacher's salary or an old age pension as any other tax dollar. It will pay as much on a county bill as the dollar charged for a grocery store license. It takes the same place in county financing as other tax dollars, so it should not be fondly embraced for the purpose of paying county bills and then stigmatized by an evil connotation when weighed against the county budget. When the legislature imposes it as a medium for bill paying it is purged of any taint for that purpose.

From what has been said, we think it necessarily follows that the estimate of receipts and revenue from the race track fund for 1947 budgetary purposes was grounded on a false premise and had nothing in fact to support it. The best proof of this thesis is that while all the receipts from racing for the current season have not been distributed among the counties, there has already accrued to the credit of Dixie County from that fund, a sum in excess of $33,000, the amount estimated. Under Statute, Chapter 11192, Acts of 1943, that portion of the race track fund allocated to Dixie County is distributed equally between the Board of Public Instruction and the Board of County Commissioners.

In estimating for the county budget, the County Commissioners may anticipate that ninety-five per cent of all ad valorem taxes extended on the tax rolls will be paid. Payment of racing taxes runs with the tourist season and fluctuates largely as that season does. It could hardly be contended that factors affecting the tourist season would not

affect racing revenues, neither could it be said that the tourist business was not one of the State's major businesses. The amount of racing funds collected the previous year might in normal times be a safe guide on which to base the estimate of receipts for the current year, but in case of an abrupt economic decline, it would be an unsafe guide. Economic conditions over the country, the indications pointing to whether the State will have few or many winter visitors, and the proportion of those who are liberal or conservative spenders, are factors that may be considered. Average returns from racing over a period of years and the factors that cause them to fluctuate may be considered. There are resources from which this and other pertinent information can be secured that will lead to an intelligent answer to this question. It would make for systematic and uniform administration if this information could be catalogued by some centralized authority and distributed among the counties.

The purpose and policy of budgeting is to inoculate the administration of national, state and local government with some degree of system and business order; to put an end to blind spending; to get away from anything that savors of a spendthrift policy, and reduce income and outgo to a common level. It is contrary to every principle of county financing to permit excess amounts to accumulate in any county fund. This Court and the county generally are committed to the doctrine that authority and necessity for a tax levy must go hand in hand. Cawthon v. DeFuniak Springs, 88 Fla. 324, 102 So. 250; Lee v. Atlantic Coast Line Railroad Co. 141 Fla. 545, 194 So. 252.

It is alleged in the bill of complaint and not disputed, that Dixie County received $98,000 from race track revenue during the 1946 season, that it estimated that it would receive only $33,000 from that source for the 1947 season, and that the budgetary requirements for all county purposes are $72,864.48 for the same season. We find no basis on which we can reconcile the amount reasonably to be expected from race track funds with the pattern prescribed herein for estimating the revenue and receipts from sources other than taxes that may be reasonably expected to supply the county requirements.

It is the duty of the county officers named as parties to this cause, to make an estimate of revenues and receipts from avails other than taxes, including that from race track funds, after the pattern herein prescribed, so the judgment appealed from is reversed with directions to proceed not inconsistent herewith.

Reversed with directions.

THOMAS, C. J., BUFORD, CHAPMAN, ADAMS and BARNS, JJ., concur.

