ADKINS, Justice
(dissenting):
I respectfully dissent.
In holding that the road and bridge fund may be funded in whole or in part from *422 other lawful sources of anticipated revenue not designated for a particular purpose “so long as such sources are sufficient to meet road and bridge requirements of the county for the ensuing budget year,” the District Court of Appeal recognizes that the county commissioners must first consider the monetary requirements of the fund. But the District Court of Appeal overlooked the firmly established law in our State, that the road and bridge requirements of the county include a share for the repair and maintenance of city streets.
The result now permitted under the District Court’s decision and the decision of the majority in this Court is to require city taxpayers to pay for road and bridge construction and maintenance done by the county even though such construction and maintenance may be limited to areas outside the limits of the city. Since counties spend most of their road and bridge fund exclusively outside city limits, it is only just and proper that some credit or consideration be given to city taxpayers who, in most instances, pay the bulk of county taxes. In fact, city taxpayers in Alachua County carry approximately two-thirds of the tax burden.
Fla.Stat. § 336.59, F.S.A., provides as follows:
“Levy of tax for road and bridge purposes; proportion to municipalities.—
“(1) The commissioners shall levy a tax not to exceed ten mills on a dollar on all property in their county each year for road and bridge purposes. Such tax, when collected, shall be paid over to the county depository and kept in a separate fund, which fund shall not be expended for any other purpose than for work on the public roads and bridges in the county, and for the payment of the salaries of employees engaged in road and bridge work, and in providing the necessary tools, materials, implements and equipment and for the necessary work on such roads and bridges.
“(2) One-half the amount realized from such special tax on the property in incorporated cities and towns, shall be turned over to such cities and towns, to be used in repairing and maintaining the roads and streets thereof, as may be provided by the ordinances of such cities and towns.”
County budgets, in the absence of any special or local laws, are governed by the provisions of Fla.Stat. Ch. 129, F.S.A. Section 129.01 thereof specially requires that the budget contain a “road and bridge fund” * * * “which shall control the levy of taxes and the expenditure of money for all county purposes during the ensuing fiscal year.” (Emphasis supplied) In County Commissioners of Duval County v. City of Jacksonville, 36 Fla. 196, 18 So. 339 (1895), this Court, in construing the provisions of Fla.Stat. § 336.59(2), F.S.A., held that the construction, maintenance and repair of the streets located within a municipality was a “county purpose.”
Fla.Const. art. VIII, § 1(h) (1968), contains the following provision:
“Taxes — Limitation. Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas.”
As an incident to the procedure followed by Alachua County, the ad valorem tax of the city property owners is increased because funds in the county road and bridge fund are not properly distributed to the city. This is an indirect way of subjecting property within the municipality to taxation for services rendered by the county exclusively for the benefit of the property of residents in unincorporated areas.
This Court has articulated the legislative intent of Fla.Stat. § 336.59, F.S.A., quoted above, as imposing upon the county the responsibility for funding a county road and bridge fund that must embrace the *423 work to be done on the roads, streets and bridges within the municipalities of the county.
In Nelson v. Fort Lauderdale, 54 So.2d 207 (Fla.1951), the Court said:
“Casual inspection discloses that the purpose of this act was to provide a dependable sum annually for road and bridge purposes and for no other purpose, except that one-half the amount collected in cities and towns ‘shall be turned over’ to them ‘to be used in repairing and maintaining the roads and streets thereof’ as may be provided by ordinance. The whole tenor of the act has to do with the repair and maintenance of roads, streets and bridges. Tunnels were not contemplated. Street, road and bridge repair is one of the most urgent necessities of every county and municipality in the state and is one of the most consistent drains on their tax program. Section [336.59] makes possible a definite sum annually for that purpose.” (Page 208)
Also in Lee County v. City of Fort Myers, 52 So.2d 792 (Fla.1951), the Court said.
“The County Commissioners supervise the expenditure of the ‘Road and Bridge Funds’ in the county outside the towns and cities, while the municipal authorities supervise its expenditure on the roads and streets within the cities.” (Page 793)
In 1951, a special act relating solely to Alachua County was enacted (Ch. 27383, Laws of 1951), which exempted Alachua County from the application of the provisions of Fla.Stat. § 336.59. This exemption was repealed by Fla.Laws, Ch. 59-1041. By Ch. 65-1236, Laws of Florida, the budgetary procedures set forth in Fla.Stat. Ch. 129, F.S.A., were altered as to Alachua County so that the county commissioners were authorized to consolidate all of its separate budgetary funds into a single general fund. However, this law was repealed by implication when the Legislature enacted Ch. 70-282 (Fla.Stat. § 129.011, F.S. A.). This tracked the Alachua County special act insofar as consolidating separate budgetary funds into a single general fund but Ch. 70-282 added an exception “that the road and bridge tax shall be levied under Section 336.59, Florida Statutes, and shown as a separate budgetary fund.” Once again the Legislature recognized the obligation due the cities by the counties.
The “second gas tax” was imposed by Fla.Stat. § 208.04, F.S.A., and its use is restricted by the provisions of Fla.Stat. § 208.04(4)' (b), F.S.A. The use of this tax is prescribed in Fla.Const., art. XII, § 9(c) (5) (1968), for bonding purposes and for the acquisition and construction of roads.
The “additional gas tax” imposed by Fla.Stat. § 208.44, F.S.A., is used “for the acquisition of rights-of-way, or the construction, reconstruction, maintenance and repairs of roads and bridges (in the county) or reduction of bonded indebtedness. However, Fla.Stat. § 208.44(15), F.S.A., reads as follows:
“It is declared to be the legislative intent that the funds derived from this section shall be used in such manner and for the purposes aforesaid to reduce the burden of ad valorem taxes in the several counties.”
If the purpose of this tax was to reduce the burden of ad valorem taxes in the counties, it necessarily follows that the intent of the Legislature was to substitute the receipts from this “additional gas tax” for the receipts from the tax levy required by Fla.Stat. § 336.59, F.S.A., quoted above.
Fla.Stat. § 550.13, F.S.A., provides for distribution of race track funds to the several counties. After receipt by the individual county, its use is controlled by Fla. Stat. § 550.14, F.S.A., and the county commissioners are given authority to divert its use to the county school fund or any other lawfully authorized fund.
Surely it could not be said that because State race track funds, gasoline taxes and other revenues (which are for the benefit of everyone within or without the city *424 limits) are now available, that all county funds may be manipulated in such budgetary fashion that only non-city taxpayers enjoy their benefit. Such an interpretation is a plain violation of the legislative intent. The expression of the Legislature in Ch. 70-282, Laws of Florida (Fla.Stat. § 129.011, F.S.A.) that “the road and bridge tax shall be levied under Section 336.59, Florida Statutes, and shown as a separate budgetary fund” shows positively that the county will not be allowed to co-mingle or shuffle funds in a way to suit its convenience with the result that city taxpayers are excluded from the express benefits intended by Fla.Stat. § 336.59(2), F.S.A.
In the case of Consolidated Naval Stores Co. v. Hendry, 158 Fla. 865, 30 So.2d 617 (Fla.1947), the Supreme Court disallowed the arbitrary allocation of budgetary items where the County substantially lowered its estimate for race track funds and increased its resulting necessity for ad valorem taxes. There the Court required the County Board to alter its budget by increasing the anticipated receipts from race track funds to a realistic figure and decreased the resulting ad valorem tax need. The principle of the case was that the county board is not allowed to juggle funds merely to suit its own purposes, but such budgets must be made in good faith consistent with the principles enunciated in the law, and the Court stated:
“The purpose and policy of budgeting is to inoculate the administration of national, state and local government with some degree of system and business order; to put an end to blind spending; to get away from anything that savors of a spendthrift policy, and reduce income and outgo to a common level.” Consolidated Naval Stores Co. v. Hen-dry, supra, (p. 619).
This principle prohibits the arbitrary assignment of budgeted funds by the Board of County Commissioners so as to defeat the purposes of Fla.Stat. § 336.59(2), F.S. A. In other words, under the rationale of the District Court of Appeal and the majority opinion, the county commissioners could arbitrarily eliminate that part of their duty to provide money for the repair and maintenance of city streets through budget adjustment and manipulation.
From the history of our laws relating to the construction and maintenance of public roads, bridges and highways, the reason for this sharing is evident. City taxpayers must carry the burden for road and bridge work both inside and outside the city. Sharing this fund alleviates a duplication of the tax burden.
This is not a power struggle between county and city authorities for operating revenue, but a struggle by city taxpayers, who bear the heaviest burden of county and state taxation, seeking to retain their participation in the benefits of revenue sharing.
Fla.Stat. § 335.01, F.S.A., designates and classifies state roads into four classes:
(a) The state highway system;
(b) The state park road system;
(c) The county road systems; and
(d) The city street systems.
Fla.Stat. § 335.04, F.S.A., divides the state highway system into the primary road system and the secondary road system. Other provisions provide for interstate highways, turnpikes, and expressways. The counties’ financial obligations toward securing rights-of-way, as well as the construction and maintenance of the state roads are provided by other portions of the statutes.
Fla.Stat. § 336.01, F.S.A., designates the county road system as follows:
“Designation of county road system.—
“The county road system shall consist of all public roads outside of municipalities, not included in the state highway system or state park road system, and such municipal connecting links and extensions as may be agreed upon by the boards of county commissioners and municipal authorities.”
Fla.Stat. § 336.59, F.S.A., the statute involved in these proceedings, provides the method of funding this county road system.
*425 If a board of county commissioners has the discretion of funding the budgeted road and bridge fund from revenue sources other than the special property tax provided for by Subsection (1), of Fla.Stat. § 336.59, F. S.A., the board should compute the 50 per cent refund provided therein for cities on the basis of the total amount budgeted for road and bridge purposes within the county road system without regard to the source of funding, in the same proportion as if the entire fund had been realized from the special ad valorem tax.
I would quash the decision of the District Court of Appeal and answer the certified questions as follows:
I would answer the first question “yes.”
In answer to the second question, I would hold that the board of county commissioners may fund the road and bridge fund by allocating thereto monies realized from other county revenue sources.
In answer to the third question, the board of county commissioners should compute the 50 per cent refund to the municipalities on the basis of the total amount budgeted for road purposes within the county road system without regard to the source of funding.